[Civ. No. 838.   Third Appellate District.—May 24, 1911.]

HIRAM COREY, Appellant, v. JAMES P. STRUVE and AUGUST STRUVE, Respondents.

LEASE OF LAND FOR SUGAR BEETS—DELIVERY OF CROP TO SUGAR COMPANY—RENTAL—TOPS UNDIVIDED—CUSTOM AS TO FERTILIZING—INJUNCTION AGAINST WASTE.—A lease of land for sugar beet farming, which provides against waste by the lessees, and that the land is "to be farmed in accordance with the customs and directions of the Spreckels Sugar Company, or its field superintendent," and "at the proper time or times and when directed by said company, they will harvest, top, haul and deliver said beets to the Spreckels Sugar Company, . . . and when so delivered, one-fourth of said beets in weight are to be delivered in the name of" the lessor, "as his property, and as the yearly rentals," does not provide for any division of the tops, which by custom were left on the ground to be plowed under for fertilization, and the lessor is entitled to enjoin the lessee from waste by diverting three-fourths thereof, under a claim of right thereto.

ID.—DISTINCTION BETWEEN "CROP" AND "TOPS."—While, in a general sense, a "crop" of beets might include the "tops" as severed from the soil, yet the lease clearly recognizes a distinction between the "crop" of beets and the "tops" in providing the whole "crop" of beets to be "topped" before delivery to the sugar company, which clearly shows that it was not the intention of the parties either to divide the "tops," or to include the same as any part of the "crop."

ID.—REFERENCE TO "CUSTOMS" OF SUGAR COMPANY—UNIFORM FERTILIZATION OF LEASED LAND WITH "ALL TOPS."—The provision in the

lease that the lands were to be farmed with beets "in accordance
with the customs" of the sugar company makes its custom as to
the use of "tops" on leased land controlling under the terms of the
lease; and where it appears that the sugar company owned a large
number of acres of leased land, and that its uniform custom was
that "all beet tops" were to be left upon the land to be used for
the purpose of fertilization thereof, such custom referred to in the
lease adopts the same requirement as to "all tops" on the leased
land, which the lessor may enforce.

ID.—KNOWLEDGE OF PARTIES AS TO SUCH "CUSTOM."—It clearly appears
not only that each party understood that the other assumed that
there was to be no division of the beet tops, but also that each had
knowledge of the uniform custom of the sugar company that all beet
"tops" must be left on the ground to be plowed under for fertiliza-
tion.

ID.—CONSTRUCTION OF LEASE AS A CONTRACT.—Applying the principles
for the interpretation of contracts embodied in the Civil Code to
the construction of the lease, the mutual intention of the parties,
so far as ascertainable, must control, and any uncertainty as to the
promise of the lessees must be resolved in the sense in which they
believed the lessor as promisee understood it at the time of making,
and construing every part of the lease together, effect must be
given to the provision as to "customs" of the sugar company, as
distinguished from that as to "direction."

ID.—CUSTOMS AS TO LEAVING "TOPS" PART OF CONTRACT FOR BEET
"FARMING"—PRIOR CUSTOM OF LESSOR.—If the custom as to leav-
ing "tops" for the purpose of fertilization be considered as part of
beet "farming," it appears to follow that defendants as lessees
promised the lessor to leave the "tops" for that purpose. The word
"farming" includes the cultivation and fertilization of the soil, as
well as the caring for and harvesting the crops. If such custom
as to beet tops is part of beet "farming" the condition is the same
as if the lessees had promised to farm the land as it had been
previously farmed by the lessor, who for years prior thereto had
uniformly plowed the beet tops under. This practice would be con-
sidered a part of the contract, and the lessee would be bound to
pursue a similar course.

ID.—LEASE AS TO "BEET TOPS" TO BE CONSTRUED ACCORDING TO USAGE
OF PLACE.—In any event, the lease as a contract, if deemed silent
as to the disposition of the beet tops, is to be interpreted according
to the law and usage of the place where it is to be performed, or if
no place for performance is specified, according to the law and
usage of the place where it is made, provided such usage is known
to both parties.

ID.—EVIDENCE—PRESUMED KNOWLEDGE.—In view of all the evidence,
it is held unreasonable to assume that defendants did not know

the usage of the place as to the disposition of beet tops for fertilization of the land on which the beets were grown, and the case is held to be one for the application of the principle that the general usages of a particular trade or business are presumed to be known to those engaged in them.

APPEAL from a judgment of the Superior Court of Monterey County, and from an order denying a new trial. M. T. Dooling, Judge.

The facts are stated in the opinion of the court.

Daugherty & Lacey, for Appellant.

J. H. Andresen, and W. S. White, for Respondents.

BURNETT, J.—The appeal is from the judgment and the order denying plaintiff's motion for a new trial.

On October 4, 1907, plaintiff leased to defendants, for the term of five years, a large tract of farming land in the Salinas valley, by a written lease, which provided that during each year of the term not less than two hundred and fifty acres should be devoted to the growing of sugar beets. It is alleged in the complaint "that during the year 1908 the defendants planted about two hundred and seventy-eight acres of said land to sugar beets and a large part of the crop of sugar beets raised thereon has been harvested by said defendants. That in harvesting the said crop of sugar beets the defendants caused the tops of said beets to be cut therefrom and placed upon the surface of said land. That plaintiff is the owner of said beet tops, and by the terms of said lease said beet tops were to remain upon said land; and it is necessary, to prevent impoverishment of the soil, that said beet tops remain upon said land as fertilizer." That under the terms of said lease a part of the rental to be paid plaintiff consists of a share of the crop of sugar beets. "That the defendants, without any right whatever, have removed from said lands a large part of said beet tops and have sold and otherwise disposed of the same, and they assert and give out and threaten that they intend to and will remove from said lands the beet tops now remaining thereon," as well as those to be grown hereafter. Wherefore plaintiff prayed for an

injunction to restrain the defendants from removing any beet tops from the premises during the term of said lease.

Appellant states that his cause of action "is based upon three propositions: 1. That the removal of the beet tops would impoverish the soil, and would therefore be in violation of the provision of the lease against waste. 2. That the removal of the beet tops would be in violation of the following provision of the lease: 'Said lands so farmed to beets to be farmed in accordance with the customs and directions of the Spreckels Sugar Company, or its field superintendent.' 3. That the plaintiff as landlord is the owner of the beet tops."

In accordance with its findings of fact and conclusions of law the trial court "ordered, adjudged and decreed that the defendants be, and they are hereby enjoined from removing from the lands described in the lease referred to in the complaint, any of the beet tops cut from sugar beets grown on said premises during the term of said lease. That the plaintiff is the owner of one-fourth of said beet tops and the defendants are the owners of three-fourths of said beet tops; and each of said parties may dispose of his share of said beet tops by feeding them to cattle on said premises, and retain all moneys or benefits received therefrom without accounting to the other party therefor; but if said beet tops are fed to stock they shall be fed upon the lands whereon said beet tops are grown, in the manner in which beet tops are usually fed, that is to say, they shall not be gathered from the rows in which they are deposited when cut, but may be scattered upon said lands."

It is not disputed that when the beets are ready for harvesting they are plowed out of the ground, the tops are then cut off and deposited in rows alongside of the rows of beets. The beets are then loaded into wagons and hauled to the Spreckels sugar factory and the tops are customarily left upon the ground to be plowed under for fertilizing purposes, or fed upon the ground to cattle turned therein. The evidence, it may be remarked, shows a conflict as to whether it is more beneficial to the soil to plow the tops under or to feed them to cattle upon the land, thereby obtaining the ordure for fertilization.

The trial court based the conclusion as to the ownership of the beet tops upon its construction of the following provision in the lease: "And at the proper time or times, and when directed by the said Spreckels Sugar Company, they (the lessees) will harvest, top, haul and deliver said beets to the Spreckels Sugar Company at Spreckels, California, and when so delivered, one-fourth of said beets, in weight so delivered, are to be delivered in the name of, and for the use of the party of the first part herein, as his property and as the yearly rentals for such portion of said lands farmed each year to beets, and said party of the first part hereby reserves to himself the one-fourth of the crop of beets raised each year as the property of the lessor." It is stated by appellant that the learned trial judge declared in his opinion that, "so far as the ownership of the tops is concerned, it is determined by this provision and under it, the plaintiff cannot be held to be the owner of more than one-fourth of such beet tops."

We think the contract has not been construed according to the intention of the parties as gathered from all the terms of the instrument, viewed in the light of the familiar rules of construction.

It is no doubt true that the phrase "crop of beets" might be interpreted to include the tops, as the word "crop," in its general signification, means the product of cultivated plants while growing, or that product after it has been harvested or severed from the stock or root to which it was attached. (8 Am. & Eng. Ency. of Law, p. 302.) It seems clear, though, that the parties here used the term in the latter and more restricted sense. There can be, indeed, no uncertainty as to what they intended should be delivered to the Spreckels Sugar Company. The defendants agree to "harvest, top, haul and deliver said beets to the Spreckels Sugar Company." A distinction is here recognized between the beets and the tops. The said agreement simply means and can mean nothing else than that, after harvesting and cutting off the tops, they are to deliver the esculent roots to the company. Indeed, there is no contention that the defendants were to deliver the tops to the company. It is plain, therefore, that the rent consisted of a proportion of

the beets after they had been topped, for the provision continues, "and when so delivered, one-fourth of said beets, in weight so delivered are to be delivered in the name of and for the use of the party of the first part herein, as his property and as the yearly rental of such proportion of said lands farmed each year to beets." It requires nothing more than a transposition of the foregoing to make it appear as follows: The yearly rental of the land farmed each year to beets shall be one-fourth of said beets in weight after they have been harvested, the tops removed and the beets then delivered to the Spreckels Sugar Company.

The succeeding clause would seem to be a mere repetition of the provision as to the rent. "One-fourth of the crop of beets" had already been described as the beets without the tops. If we were to construe the latter provision as including the tops we would then have two inconsistent provisions: One providing that the rent should consist of the beets without the tops and the other reserving for the rent the beets including the tops. As used, therefore, in the provision in question, the term "crop of beets" seems to mean simply the yield of beets or the beet product of the soil, and there would be no difference in signification if the reservation had been of "one-fourth of said beets" as described in the preceding clause.

Again, it was not the intention of the parties to make provision in the lease for the division of the beet tops and it was their understanding that no provision of the kind had been made. James P. Struve, who conducted the negotiations for the defendants and the only one of the latter who testified, was asked on cross-examination: "When it says in this lease 'that Mr. Corey, the lessor, reserves to himself the one-fourth crop of beets,' etc., did you understand that the word 'crop' included tops?" He answered: "I did not." Again, he was asked this question: "Was it your understanding that there was some provision about tops in the lease?" His answer was: "No; it never occurred to me until Mr. Armstrong approached me first."

While the appellant was not asked the direct question as to his understanding of the lease in this respect, it is a fair inference from his testimony that he understood there was

no such provision. He refers to written leases to other parties and declares "there was never any provision with reference to beet tops," and also: "The beet tops from the land were never sold and moved from the land." Again he says: "The landlord always kept the tops. I do not know of one who does not." Indeed, the attitude of both parties was consistently opposed to the view that there was any provision in the lease as to the division of the beet tops. The defendants, at the trial, relied upon the custom prevailing in Pajaro valley where they had farmed for years, and the plaintiff upon the custom in Salinas valley, and also upon a subsequent provision of the lease hereinafter to be noticed. It can hardly be gainsaid, therefore, that the construction placed upon the lease by the court below is directly opposed and contrary to the intention and understanding of the parties. Of course, the basic principle of all interpretation of contracts is "to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, sec. 1636.) If the contract had been free from any doubt, manifestly, in the absence of mistake or fraud, no extraneous evidence would be admissible as to the understanding or intention of the parties. That is not the case here and it may be said that no objection was made to such evidence.

Another principle, somewhat allied to the foregoing, may also be invoked. Each party undoubtedly understood that the other assumed that the lease made no provision as to the division of the beet tops. Defendants, for instance, so believing themselves, would naturally conclude that plaintiff had the same view. This is strengthened by the consideration that they knew it was the custom of the Spreckels Sugar Company and all of its tenants to leave the beet tops upon the ground and plow them under; that beet tops were never mentioned in any conversation with plaintiff about the lease; that at the time the lease here was made the respondents had a similar lease of adjoining lands from the Spreckels Company upon the same terms (one-fourth of the crop) which provided that the beet tops belonged to the landlord and should be left upon the ground, and the lease itself provided that the beet land should be farmed in accordance with the

customs and directions of the Spreckels Sugar Company, which customs required the tops to be left upon the ground and to be plowed under. Viewed in this aspect, it would not be improper to consider defendants as promisors and apply to them section 1649 of the Civil Code, providing that: "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed at the time of making it, that the promisee understood it." Giving effect to this rule, we must accept one of two interpretations, either that no provision was made for the beet tops or that they were to belong to the landlord.

But we think the latter construction is required by the application of another familiar rule that "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, sec. 1641.) Assuming that the provision as to the reservation of "one-fourth of the crop of beets" introduces an element of uncertainty, it is entirely eliminated by the due consideration of the agreement to farm said beet lands in accordance with the customs and directions of the Spreckels Sugar Company or its field superintendent. It is manifest that there is a distinction between "customs" and "directions." They are familiar terms, and it is not necessary to define them. One of the customs, or, in other words, the common practice of the Spreckels Company was to leave the beet tops upon the ground to be plowed under as a fertilizer. The evidence shows this without conflict. In fact, the said James Struve testified that he knew "that in this valley the Spreckels Sugar Company required the beet tops to be left on the land." If this custom is to be considered a part of the "farming," it would seem to follow that defendants had promised to thus leave the tops. The word "farming," as suggested by appellant, certainly includes the cultivation and fertilization of the soil as well as the caring for and harvesting of the crops. It is submitted that the condition is exactly the same as though the lessee had promised to farm the land as it had been farmed by the lessor, and the latter—as really appears to have been the case—for years had plowed the beet tops under. This practice surely

would be considered a part of the contract and the lessee would be bound to pursue a similar course. To accept respondents' interpretation of this clause would be to ignore the significance altogether of the term "customs." Their contention is that they were bound merely to follow the directions of the field superintendent given by him pursuant to beet growing contracts, a copy of which appears in the record. Appellant points out that this contract shows that the field superintendent is authorized to direct the lessee as follows: 1. To cultivate up and resow where the crop is not satisfactory. 2. To commence and proceed with the harvesting of the crop and to deliver the same. 3. To select the date of delivery and the amount to be delivered each day according to the requirements of the factory. If the parties, however, had intended no more than this they should not have used the word "customs" which, as we have seen, comprehends an additional circumstance of moment. As far as the "directions" are concerned it was probably contemplated that they should be given through the field superintendent as agent of the Spreckels Sugar Company, but the "customs," which were to be recognized, relate to the said practice of the Spreckels Company.

But if we admit that the clause under review has no bearing upon the question as to the disposition of the beet tops, then we have a contract with no provisions concerning them. The situation would then call for the application of section 1646 of the Civil Code, providing that "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or if it does not indicate a place of performance, according to the law and usage of the place where it is made." By subdivision 12, section 1870 of the Code of Civil Procedure, it is also provided that evidence is admissible of "usage to explain the true character of an act, contract or instrument, where such true character is not otherwise plain; but usage is never admissible, except as an instrument of interpretation." The rule has also been stated as follows: "Evidence of usage is admitted to annex incidents to contracts where it is apparent that the parties have omitted to state important parts of their agreements, and the incident so annexed is consistent with the express terms

and its inclusion can fairly be presumed to have been intended by the parties." (29 Am. & Eng. Ency. of Law, p. 432.)

In *Kilgore* v. *Bulkley,* 14 Conn. 391, it is said: "Experience and observation prove that the engagements of individuals are in fact entered into with reference to the customs and usages which prevail in the community where they are made; they therefore tacitly agree to comform to them, and so far from doing injustice by regarding such customs and usages, it is the only mode by which justice can be obtained."

It may not be amiss to cite a few of the many examples of the application of this principle given by appellant in his brief:

Where a lease is silent as to the disposition of crops growing at the termination of the tenancy—or "away-going crops" —a local custom whereby the tenant is entitled to such crops forms a part of the lease. (*Foster* v. *Robinson,* 6 Ohio St. 90.)

A contract providing for the sale of "all the timber 6 ins. in diameter" but silent as to "laps," the "laps" passed also by local custom and usage of lumber men. (*Allen* v. *Crank* (Va.), 23 S. E. 772.)

Evidence is admissible to show that by custom the term "dry goods" used in a written contract did not include clothing, hats, caps or notions. (*Wood* v. *Allen,* 111 Iowa, 97, [82 N. W. 451].)

In *Callahan* v. *Stanley,* 57 Cal. 479, it is said: "If there was an existing usage among farmers as to the meaning of the word 'stubble' where this contract was made, it must be inferred that the contracting parties, being farmers, contracted with reference to it, and that they used the word in the broader meaning which was given to it by that usage and not in the ordinary or popular sense. Evidence of such usage and meaning was, therefore, admissible to define and explain the peculiar or local meaning of the word as it was used in the contract."

And in *Higgins* v. *California Petroleum etc. Co.,* 120 Cal. 629, [52 Pac. 1080], it was held that parol evidence was admissible to show that the term "gross ton" had a peculiar local significance, and meant a long ton of two thousand two

hundred and forty pounds and not the statutory ton of two thousand pounds.

The evidence was quite clear as to the custom in Salinas valley that the landlord owns the tops. As stated, though, by the witnesses, a provision to that effect was generally contained in the lease, the counsel for defendants stating, in reply to a question by the court, that probably ninety per cent of all these leases contained a clause providing that the beet tops belonged to the landlord. The plaintiff testified that by custom the landlord always gets the tops, and that he did not know of one who does not, that he always got the tops from former tenants, though their written lease made no mention of them, and that he didn't know of a farmer in the valley who does not leave the tops.

Of course, for evidence of this character to have any potency, it must appear that the parties to the contract were aware of the existence of the custom. It could not be said with any show of reason that they contracted with reference to a custom of which one of the parties was ignorant. "Evidence of usage is admissible only on the ground that the parties who made the contract were both cognizant of the usage and must be presumed to have made their engagements with reference thereto." (*Parnell* v. *Delta Transportation Co.*, 94 Mich. 247, [53 N. W. 1049].) And it is claimed by respondents that they had farmed all their life in Pajara valley and were thus unacquainted with the customs of Salinas valley and that their knowledge of local practices was limited to a single lease which they had received from the Spreckels Sugar Company which would not import knowledge of a general custom. But defendant James P. Struve testified, as we have already seen, that he knew when he came that the said company required the beet tops to be left on the land. It appears in the evidence that about twelve thousand acres altogether were farmed to beets and of this acreage the said company farmed and leased about seven thousand acres. He therefore knew the practice as to a very large part of the whole. It may be said also that he nowhere states that he was not familiar with the custom in this respect, although he declares that he was "not familiar with the farmers in Salinas valley." It is unreasonable to assume that defendants would make no inquiry concerning the matter.

It was of considerable importance and to seek information concerning the custom as to the beet tops would naturally occur to one who had been in the business before, and we think it is a case for the application of the principle that the general usages of a particular trade or business are presumed to be known to those engaged in them. (*Smith* v. *Russell Lumber Co.*, 82 Conn. 116, [72 Atl. 577] ; *Waring* v. *Grady*, 49 Ala. 465, [20 Am. Rep. 286] ; *Ankeny* v. *Young*, 52 Wash. 235, [100 Pac. 736].)   And if known there is no doubt that the parties are held to have contracted with reference to them unless the contrary appears and such usages form a part of the contract. (*Union Ins. Co.* v. *American T. I. Co.*, 107 Cal. 327, [48 Am. St. Rep. 140, 40 Pac. 431, 28 L. R. A. 692].)

In the view we take of the record, the position of respondents is untenable, and the judgment and order are therefore reversed.

Hart, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 22, 1911.