[S. F. No. 8881. In Bank.—May 27, 1920.]

## JOHN H. WILSON, Respondent, v. THE TRAVELERS' INSURANCE COMPANY (a Corporation), Appellant.

[1] ACCIDENT INSURANCE—VOLUNTARY EXPOSURE TO EXPLOSIVES—CONSTRUCTION OF POLICY.—A clause in a policy of accident insurance providing that the insurance shall not cover injury "resulting wholly or partly from any of the following, to wit: Voluntary over-exertion, or voluntary exposure to unnecessary danger, medical or surgical treatment . . . firearms, fireworks, or explosives of any kind," etc., is not to be construed to apply only to the voluntary exposure to explosives.

[2] ID. — INJURY FROM "WRECKAGE" OF RAILWAY PASSENGER-CAR — EXPLOSION IN TOILET-ROOM—RECOVERY.—Under a one-day ticket policy of accident insurance which in one clause provided that it should not cover injury resulting from explosives of any kind, and in another clause provided that it should cover injuries caused by the "wreckage" of a railway passenger-car, the insured is entitled to recover where he was injured, while sitting as a passenger in such a car, as the result of an explosion which occurred in the toilet-room and caused the walls thereof to give way, the injury being the result of the wreckage of the car and not of the explosion.

[3] ID.—RECOVERY ON ONE POLICY—LIMITATION.—Where a one-day ticket policy of accident insurance provided that insurance on any person was limited to a named amount, the insured was entitled to recover on only one policy, although at the time of the injury he had two policies which overlapped for a period of several hours.

[4] ID.—EVIDENCE—CUSTOM AS TO SALE OF POLICIES.—Evidence that an accident insurance company sold more than one daily ticket

policy to a passenger on certain days was not competent to show that it was the custom of the company so to do.

[5] ID.—LIMITATION OF LIABILITY — CUSTOM IN SELLING DAILY POLICIES—ABSENCE OF ESTOPPEL.—An accident insurance company is not estopped by proof of a custom of selling more than one daily ticket to a passenger from setting up as a defense to an action on two such policies the limitation of liability, unless the conduct of the insured was in some manner influenced thereby.

APPEAL from a judgment of the Superior Court of Alameda County. Denver Sevier, Judge Presiding. Modified and affirmed.

The facts are stated in the opinion of the court.

Coogan & O'Connor for Appellant.

L. Ernest Phillips for Respondent.

WILBUR, J.—Plaintiff recovered from defendant for bodily injuries, accidentally received, double weekly indemnity on each of two one-day ticket policies of accident insurance purchased by him for twenty-five cents each. The first was purchased at 6:30 P. M., June 29, 1916, and the second at 6:15 P. M., June 30, 1916, from a ticket agent of the Atchison, Topeka & Santa Fe Railway Company. The accident occurred at 7:30 P. M., June 30, 1916, while plaintiff was aboard a Southern Pacific passenger train. As each policy by its terms expired at midnight of the next day after date both were in effect at the time of the accident. The amount recovered on each policy was one thousand three hundred dollars, being double the weekly indemnity of $12.50 for fifty-two weeks. The defendant appeals from the judgment. The only fact in dispute is as to whether the injury resulted from an explosion within the meaning of that term as used in the policy. All other questions involve the interpretation of the policies and their application to the admitted facts. The plaintiff, a passenger, was seated in a passenger-car which was standing at the Southern Pacific Company's Sixteenth Street depot, in Oakland, when a violent explosion in the toilet-room occurred, by which the car was wrecked. The trial court finds that "in and by the wreckage of said passenger-car and by reason of the

same and as a result thereof the plaintiff sustained bodily injuries.'' ''That such external and internal injuries of plaintiff were occasioned wholly and solely by the wreckage of the said passenger-car.'' The policies contained the usual terms insuring the holder against injuries effected by accidental means, ''subject to the conditions herein contained to wit.'' Then follow clauses lettered consecutively from ''a'' to ''k.'' Clauses ''a,'' ''b,'' ''c'' fix the amount of insurance to be paid for injuries. The double indemnity clause ''d'' is as follows, to wit:

''d. If the insured be a male, and such injuries shall be caused by the wreckage or burning of a railway passenger-car or vessel licensed for the transportation of passengers, provided in either case by a common carrier and propelled by mechanical power, while the insured is a passenger and actually within the car or on board the vessel, then the company will pay double the amount otherwise payable under clause a, b or c of this policy.''

Clause ''g'' contains the provision with reference to explosives, relied on by appellant to defeat plaintiff. This clause reads as follows:

''g. This insurance shall not cover disappearance nor injuries of which there is no visible contusion or wound on the exterior of the body of the insured, nor shall it cover accident, injury, disability or death resulting wholly or partly, from any of the following, to wit: voluntary overexertion, or voluntary exposure to unnecessary danger, medical or surgical treatment, hernia, disease in any form, fits, vertigo or sleep-walking, gas or poison in any form or manner or contact with poisonous substances, sunstroke or freezing, firearms, fireworks, or explosives of any kind, horse, automobile or bicycle racing, aerial navigation, lacrosse, football, dueling or fighting, war or riot, nor shall this insurance cover suicide sane or insane, or injuries, fatal or nonfatal, inflicted intentionally by the insured or by any other person, sane or insane, or sustained by the insured while insane or intoxicated, while violating law, resisting arrest or fleeing from justice, or while entering or leaving any moving conveyance or trying so to do, or happening while in or on any part thereof not provided for occupancy of passengers or while on the steps or platform

of any moving car (street-cars excepted) or while on the right of way or bridge of any railway.''

[1] Respondent contends that this clause should be construed to apply only to the voluntary exposure to explosives. The policy is hardly susceptible of such construction. Omitting inapplicable clauses the proviso reads: ''Nor shall it cover injury resulting wholly or partly from any of the following, to wit: . . . firearms, fireworks, or explosives of any kind.'' The punctuation as well as the context remove these clauses from the operation of the words ''voluntary exposure.''

The next question arises from the fact that the plaintiff was injured by the wreckage of a passenger-car, to which clause ''d'' applies. This clause being specific and applicable by its terms to the manner in which the plaintiff was injured, it is claimed that it should control the general exception in clause ''g,'' of injury by explosives. The point is not free from difficulty. ''Wreckage'' is defined as ''the act of wrecking.'' The word implies that the car is a passive instrumentality, acted upon by some force which wrecks it. This force must always be a proximate cause of the injury. Therefore, where an explosive wrecks the car, it is proper to say that an injury resulting from the wreckage of the car was ''caused'' by the explosion. This would be true if the explosion was only sufficient to derail a moving train. The difficulty with such a construction arises from the fact that it would completely nullify clause ''d,'' which is evidently intended to secure the patronage of intending passengers. If we must look for the cause of the injuries to the first cause, it would never be the wreckage of the car, which is itself, a result, and not a cause. In the case at bar, if the car had remained intact, that is, if the walls of the toilet-room had been sufficiently strong to resist the explosion, or to have directed its force away from the interior of the car, the plaintiff would have suffered no greater injury than a bystander at great gun target practice. The wreckage of the car intervened between the explosion and the plaintiff. The defendant has chosen to use the phrase ''wreckage of the car'' as a cause of injury for which they hold themselves responsible. Although the explosion was the proximate cause of the injury, it was, by the peculiar terms of the policy, made a remote cause,

or secondary cause where the wreckage of the car intervened. No doubt if an explosive bomb had been placed in the plaintiff's lap and there exploded, killing him and wrecking the car, the wreckage of the car would not be a "cause" of the accident within the meaning of the policy. But where it was necessary for the explosive to first destroy or wreck the car to reach the passenger, or where parts of the wrecked car striking the passenger cause the injury, the terms of the policy would warrant a recovery. The defendant is privileged to frame its contracts of insurance in any terms it may choose, and in the absence of ambiguity the courts enforce such contracts as written. But they are offered to the public, and are intended to be sufficiently attractive to secure purchasers. [2] The established rule of construction of such contracts require us to settle the ambiguity arising from the inapt phraseology "caused by the wreckage or burning of a railway passenger-car" against the insurance company, and therefore to hold that where the injury is caused by the "wreckage" of the car which is in turn caused by the explosion of an explosive, the insured can recover under clause "d" for the reason that such "wreckage" is itself a "cause" of injury within the meaning of the latter clause. In view of the foregoing conclusion, in which we have assumed that the explosion was that of an "explosive" within the meaning of that term as used in the policy, it is unnecessary to consider the points made with reference to the evidence or findings in that connection.

It is contended by appellant that the plaintiff in any event is entitled to recover for his injuries on only one policy, and on the other to be refunded the premium, which has been tendered to him, under proviso "e," which is as follows:

"e. Insurance on any person under ticket policies is limited to the principal sum of $2,500 indemnity for injuries resulting in death, and to males, $1,250 for dismemberment, $12.50 weekly indemnity for wholly disabling injuries and the extra insurance provided for in clause d: the company will return on demand to the insured or to his or her executors, administrators or assigns, all premiums paid for ticket policies in excess thereof."

[3]  In view of the fact that each policy provides for two thousand five hundred dollars for death, $1,250 for dismemberment, and $12.50 weekly indemnity, the words "ticket policies" must refer to other policies of the same company, for each separate policy is already so limited, and if this were doubtful, the last sentence, by which the company agrees to return all premiums paid for ticket policies in excess thereof, makes clear the purpose of the company to limit its liability to the face of the single policy.  It is claimed, however, that the defendant is estopped to deny its full liability on the second policy because it is alleged to be the custom of the defendant to issue as many separate policies as may be requested, charging full premium for each.  In proof of this alleged custom one witness testified that on December 12, 1917, he purchased four ticket policies from the defendant's agents, two at Seventh and Broadway, and the others at the main office at Thirteenth and Broadway. The policies were admitted in evidence, and it appears therefrom that two were dated 4 P. M., December 11, 1917, one 6:30 P. M., December 12, 1917, and another December 13, 1917.  [4]  This evidence is far short of proving a uniform custom of the company or of its agents in June, 1916, at the time of the issuance of plaintiff's policies, or at any time, and was not competent evidence to show the custom in 1916, nor could defendant be estopped by such a custom, even if proved,  [5]  unless the conduct of the plaintiff was in some manner influenced thereby, and no evidence was offered that he even knew of such custom.  Plaintiff bought these two policies, each good for one day, at an interval of twenty-four hours, and by reason of the fact that the policies were good for more than twenty-four hours, they overlapped for a period of five and one-half hours.  During that period he was injured.  The policies make provision for such a contingency by providing for a refund of the premium on demand, a method of adjustment no doubt made necessary by reason of the fact that these tickets were issued to all applicants at every ticket office of the railroad company, and that a purchaser could for that reason secure a number of policies covering substantially the same period and loss.  The plaintiff was entitled to recover one thousand three hundred dollars upon but one policy and upon the other twenty-five cents.

The trial court is directed to modify the judgment by striking out the amount of two thousand six hundred dollars, and inserting in lieu thereof the amount of $1,300.25, and as so modified the judgment is affirmed.

Lennon, J., Shaw, J., Lawlor, J., Olney, J., and Angellotti, C. J., concurred.