CITY SAVINGS AND LOAN ASSOCIA-
TION, a California Corporation,
Plaintiff,
v.
GENERAL INSURANCE COMPANY OF
AMERICA et al., Defendants.

FIDELITY SAVINGS AND LOAN ASSO-
CIATION, a corporation,
Plaintiff,
v.
AETNA LIFE AND CASUALTY COM-
PANY et al., Defendants.

SECURITY SAVINGS AND LOAN AS-
SOCIATION, a California Corpo-
ration, Plaintiff,
v.
FIDELITY AND DEPOSIT COMPANY
OF MARYLAND, a Maryland Cor-
poration, Defendants.

Nos. 46379 RFP, 51126 RFP and
45642 RFP.

United States District Court,
N. D. California.

Nov. 22, 1974.

W. M. Pinney, Jr., Nicholas Deriman, Husted, Pinney, Ogg & Caccia, A Professional Corporation, San Francisco, Cal., for plaintiff City Savings and Loan Association (now Gibraltar).

Jon H. Kouba, Victor P. Bonfilio, Jr., Angell, Adams & Holmes, San Francisco, Cal., for plaintiff Fidelity Savings & Loan Assoc.

John H. Finger, Hoberg, Finger, Brown & Abramson, San Francisco, Cal., for plaintiff Security Savings & Loan Assoc.

W. E. Sedgwick, Scott Conley, Douglas M. Moore, Jr., Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., for defendants Aetna Life and Casualty Co., Fireman's Fund Insurance Company, Fidelity and Deposit Company of Maryland.

Law Offices of James J. Duryea, Stephen B. R. Keller, San Francisco, Cal., for defendant, General Insurance Company of America.

## OPINION

PECKHAM, District Judge.

This is an action by three savings and loan companies against their respective bonding companies for losses which plaintiffs allegedly sustained by reason of the non-payment of certain certificates of deposit and commercial accounts by the now defunct San Francisco National Bank. The threshold issue is whether the bonds issued to plaintiffs by defendants cover losses of this nature. Defendants seek to introduce evidence of negotiations between the American Surety Association and the Savings and Loan League from 1938 until the present and an interpretation of the bonds by the Surety Association to demonstrate that the bonds do not cover

these losses. Plaintiffs object to this evidence. Pursuant to a pretrial order of this court all parties have filed briefs on the admissibility of extrinsic evidence relating to the interpretation of the bonds in question and defendants have submitted an offer of proof.

## FACTS

Plaintiffs allege in their complaint that their losses were the result of fraud, dishonesty, or illegal acts of one or more officers, directors, or employees of the San Francisco National Bank and other persons. The only provision of the Savings and Loan Blanket Bond Standard Form No. 22 which possibly covers this claim is the so-called Fraud Insuring Clause, (hereinafter Clause E). The relevant sections of the bond read as follows:

> The Underwriter . . . agrees with the Insured . . . to indemnify and hold harmless the Insured for: (E) Any loss of Property through any other form of fraud or dishonesty by any person or persons, whether Employees or not.

Plaintiffs allege that this language means what it appears to state on its face: all losses due to dishonesty, such as those incurred by plaintiffs, are covered. Defendants, however, contend that this clause must be read in context with the following other insuring clauses and that this results in a limited construction not covering plaintiffs' losses:

## INSURING AGREEMENTS
### FIDELITY

(A) Any loss through any dishonest, fraudulent or criminal act of any of the Employees, committed anywhere and whether committed alone or in collusion with others, including loss, through any such act of any of the Employees, of Property held by the Insured for any purpose or in any capacity and whether so held gratuitously or not and whether or not the Insured is legally liable therefor.

## AUDIT EXPENSE
. . . . . .

## ON PREMISES

(B) Any loss of Property through robbery, burglary, common-law or statutory larceny, theft, hold-up, misplacement, mysterious unexplainable disappearance, damage or destruction, abstraction or removal from the possession, custody or control of the Insured (whether with or without negligence on the part of any Employee) and loss of subscription, conversion, redemption or deposit privileges through the misplacement or loss of Property, while the Property is (or is supposed to be) in or on any premises anywhere, except while in the mail or with a carrier for hire other than an armored motor vehicle company for the purpose of transportation.

## OFFICES AND EQUIPMENT
. . . . . .

## IN TRANSIT

(C) Any loss of Property (occurring with or without negligence) through robbery, common-law or statutory larceny, embezzlement, theft, holdup, misappropriation, misplacement, mysterious unexplainable disappearance, being lost, stolen or otherwise made away with, damage or destruction, and loss of subscription, conversion, redemption or deposit privileges through the misplacement or loss of Property, while the Property is in transit anywhere in the custody of any of the Employees of the Insured or of any other person acting as messenger, except while in the mail or with a carrier for hire other than an armored motor vehicle company for the purpose of transportation, such transit to begin immediately upon receipt of such Property by the transporting Employee or such other person, and to end immediately upon the delivery thereof at destination.

## FORGERY OR ALTERATION

(D) Any loss through forgery or alteration of, on, or in any instrument.

## FRAUD

(E) Any loss of Property through any other form of fraud or dishonesty by any person or persons, whether Employees or not.

Defendants argue that Clause E simply adds to Clause B (on premises) and Clause C (in transit) coverage for other forms of fraud and dishonesty similar to those enumerated in these clauses. This interpretation would give Clause E no independent coverage. Since plaintiffs' losses do not fall within the scope of Clauses B or C, they would not be covered by the bonds according to defendants' construction. Defendants' contentions are based upon a legal opinion written by the Surety Association of America in 1939, which is set out in the margin.[1]

---

1. Surety Association of America's Official Interpretation of the Fraud Insuring Clause (1939):

"Your Committee in its consideration of this question noted that there is a fraud insuring clause in standard forms No. 5 Revised, No. 6 Revised, No. 20 Revised, No. 21 for New York Stock Exchange, and No. 22. It also noted that previous consideration of the effect of the fraud clause had been given in connection with Form No. 6 and Form No. 21. In connection with the promulgation of form No. 6, effective August 1, 1939, the accompanying analysis referred to the words, 'Any loss through any other form of fraud or dishonesty by any person or persons, whether officers or Employees of the Insured' with the statement that the effect of these words was to add them to the list of acts and casualties specifically named and insured against in Insuring Clause B (on premises) and C (in transit) of the bond.

"In connection with the drafting of form No. 21 for the New York Stock Exchange the fraud insuring clause was expanded to make more clear its application. The clause in that bond reads:

"'E. By reason of the loss of Property through any other form of fraud or dishonesty by any person or persons, whether officers or employees of the Insured or not, it being agreed that this clause shall not extend Insuring Clause A's definition of the persons whose fraudulent or dishonest acts are covered by the Underwriters under Insuring Clause A.'"

"The Committee gave particular consideration to the fraud insuring clause of Form No. 5 Revised reading: 'By reason of the loss of Property through any other form of fraud or dishonesty by any person or persons, whether officers or employees of the Insured or not' and unanimously adopted the following analysis:

"The phrase 'other form of fraud or dishonesty' relates to the coverage of certain of the preceding insuring clauses. The forms of fraud or dishonesty set out as covered in the preceding insuring clauses are not included in clause [E]. Neither the word 'fraud' nor the word 'dishonesty' appears in Insuring Clauses [B] and [C]. However, the circumstances of loss covered in Clause [D] are fraudulent and dishonest and many of the circumstances of loss covered in Clauses [B] and [C] are fraudulent and dishonest in character.

"Insuring Clause [A] (dishonesty):—it is not possible to find any forms of fraud not already included within the language of Clause [A] since 'any dishonest, fraudulent or criminal act' is an all inclusive phrase. Hence, Insuring Clause [E] can have no relation to Insuring Clause [A].

"Insuring Clause [D] (forgery or alteration):—The words 'forgery or alteration of any instrument' constitute so specific a statement as to exclude 'any other form of fraud or dishonesty.'

"Insuring Clause [B] (on premises) and [C] (in transit):—It is quite possible to find forms of fraud other than those set forth in Insuring Clauses [B] and [C]. Therefore, Clauses [B] and [C] are the only clauses to which Insuring Clause [E] can relate. Any loss payable under Insuring Clause [E] therefore must have been excluded from Clauses [B] and [C] only because it was the result of a form of fraud or dishonesty not enumerated in those clauses.

"Although the word 'other' ties Insuring Clause [E] to the previous insuring clauses, it leaves some doubt whether Clause [E] might not have been intended to stand alone. There seems to be no question but that the only language of extension in Clause [E] is 'other form of fraud or dishonesty.' The words 'by any person or persons whether officers or employees of the Insured or not' appear to constitute an extension of the previous coverage. But an extension by those words could be effective only under Insuring Clause [A]. Since Insuring Clause [A] already includes all forms of fraud and dishonesty the extension as to other forms of fraud is unnecessary. If the words 'by any person or persons whether officers or employees of the Insured or not' constitute an extension

## QUESTION PRESENTED

The question to be decided is whether defendants may introduce extrinsic evidence to show that the language of Clause E should be given the limited construction they suggest.

## DISCUSSION

The extensive offer of proof submitted by defendants, discussed at length below, goes to two issues. First, defendants attempt to demonstrate that the bond form in issue was the product of negotiations between the United States Building and Loan League, now, the United States Savings and Loan League, and the Surety Association of America. Second, defendants have produced evidence which purportedly shows that the interpretation advanced by the sureties in this litigation has been widely accepted in the savings and loan and surety industries and consequently is binding on the parties as a trade usage.

The defendants state that they will call John F. FitzGerald, who has served in various capacities on the executive staff of the American Surety Association. He allegedly will testify that he is familiar with the background and history of Bond Form 22 and has reviewed all materials in the Surety Association files relating to the bond. His testimony will show that correspondence between the Surety Association and the Savings and Loan League, memoranda of meetings between the two organizations, copies of standard bond forms, official interpretations of the bond provisions, and analyses of amendments to the bonds will demonstrate the following:

(1) In 1938 negotiations were held at the request of the U.S. Building and Loan League between five representatives of the League and representatives of the Surety Association.

to Insuring Clause [A], then Insuring Clause [A] is unnecessary as to losses on the premises, as defined, and in transit. Probably no court would accept an interpretation that rendered Clause [A] so far unnecessary but courts have done strange things with the language of blanket bonds. The only acceptable purpose of those words is that they explain that the extension granted as to other forms of fraud and dishonesty is to apply to Insuring Clauses [B] and [C] which actually cover 'any person or persons, etcetera.'

"There is no question but that Insuring Clause [E] is misleading in that it gives the impression of wholeness and separateness which make it appear to be a completely new coverage not included under the preceding insuring clauses. To be perfectly clear the provisions of Clause [E] should be added to both Clauses [B] and [C] and Clause [E] should be eliminated. If the words 'by any person or persons whether officers or employees of the Insured or not' were dropped from Insuring Clause [E] the possible involvement of Insuring Clause [A] would be entirely eliminated. That involvement seems to be the most serious exposure. If the Insuring Clause [E] is to stand alone the preceding clauses are limitations rather than insuring clauses and the coverage of the bond would roughly be describable as follows: That as to the types of fraud and dishonesty described in the preceding Clauses

[B] and [C] the insurer would be liable only if the loss occurred on the premises as defined or in transit, but as to all other forms of fraud not named specifically in [B] and [C] the insurer would be liable wherever the loss occurred and without the limitation of transit.

"To determine whether a loss is covered under the bond by reason of the extension set forth in Insuring Clause [E], one must square the facts of the loss to either Insuring Clause [B] or Insuring Clause [C] after incorporating into those clauses the words 'through any other form of fraud or dishonesty by any person or persons whether officers or employees of the Insured or not.'

"In keeping with the foregoing conclusions your committee recommends that the Special Problems Committee adopt the following resolution:

"RESOLVED, That whenever any member company is requested to interpret the fraud insuring Clause [E] of Bankers' Blanket Bond Standard Form 5 Revised for Savings Banks that interpretation shall be as follows:

"THAT the fraud insuring clause adds to Insuring Clause [B] (on premises) and [C] (in transit) coverage for other forms of fraud or dishonesty similar to the forms of fraud or dishonesty enumerated in those insuring clauses, subject to the provisions of Insuring Clauses [B] and [C]."

(2) The purpose of these negotiations was to develop a standard bond form for savings and loan associations.

(3) Bond Form 22 was promulgated as a result of these negotiations.

(4) In 1939 an official interpretation of Clause E was promulgated by the Surety Association and distributed to all members of the Association.

(5) In 1959 further negotiations were held at the request of the Savings and Loan League. The purpose of these talks was to revise Form 22.

(6) During these negotiations, the official interpretation of Clause E written by the Surety Association was discussed at length and "all sides agreed that the official interpretation was the correct and proper" interpretation.

(7) As a result of the 1959 negotiations, the Form 22 Savings and Loan Blanket Bond involved in the present lawsuit was promulgated.

Additionally, defendants offer to prove that in 1970, as the result of further negotiations between the Surety Association and the Savings and Loan League, Clause E was redrafted to conform to the official interpretation of the Surety Association.

Numerous documents have been submitted by defendants as part of their offer of proof. Each document will be summarized briefly. The documents submitted as exhibits are labelled A through K for defendant General Insurance Company and F–1 through F–10 for defendant Fireman's Fund Insurance Company.

*Exhibit A and F–1.* A letter from an assistant vice president of the United States Building and Loan League to a Mr. Gilkey of the Surety Association, dated 27 July 1938. The letter refers to future discussions between the two organizations and urges revision of Form 5 for use by the savings and loan associations.

*Exhibit B and F–2.* A report of the results of the conference between the surety and savings and loan associations on 10 August 1938. This memorandum reviews various negotiations between the two groups. No mention is made of Clause E.

*Exhibit C and F–4.* A letter from three casualty companies to the general counsel of the Building and Loan League, dated 31 August 1938. The letter accompanied a copy of the proposed revisions of Form 5 to make it suitable for savings and loans. Numerous provisions are explained; Clause E is not.

*Exhibit D and F–3.* A copy of a Form 5 bond revised to be used as Form 22.

*Exhibit E and F–5.* A letter from the general counsel of the Building and Loan League to a Mr. Bates of the Fidelity and Casualty Company of New York, dated 8 September 1938. The letter acknowledges receipt of the proposed bond form and indicates that the matter is being referred to a committee.

*Exhibit F and F–6.* A letter from Mr. Bates to the general counsel of the Building and Loan League, dated 13 October 1938. The letter states that a company not a member of the Surety Association was offering coverage to savings and loan associations and that there was need to expedite the consultations concerning a form bond.

*Exhibit G and F–7.* A letter from the general counsel of the Building and Loan League to Mr. Bates, dated 20 October 1938. This letter refers to the new coverage being offered, states that most of the League members on the bond committee agree with the proposed bond form, and mentions that the bond should be printed up for discussions at the upcoming League convention.

*Exhibit H.* An article discussing the history and development of Bond Form 22 written by Jean Harth, assistant counsel for the Savings and Loan League, which was presented to the Fidelity and Surety Law Committee of the Section of Insurance Negligence and Compensation Law of the American Bar Association. The article is taken from The Forum, Winter 1972 ed., Vol. VIII,

No. 2. The negotiations between the Savings and Loan League and the Surety Association from 1938 through 1972 are reviewed in some detail.

*Exhibit I.* The official interpretation of Clause E by a Surety Association subcommittee, dated 2–3 November 1939. After going through the analysis set out in the margin above, note 1 *supra*, the subcommittee concluded as follows:

"RESOLVED, that whenever any member company is requested to interpret the fraud insuring clause [E] of Bankers' Blanket Bond Standard Form 5 Revised for Savings Banks that interpretation shall be as follows:

"THAT the fraud insuring clause adds to Insuring Clause [B] (on premises) and [C] (in transit) coverage for other forms of fraud or dishonesty similar to the forms of fraud or dishonesty enumerated in those insuring clauses, subject to the provisions of Insuring Clauses [B] and [C]".

*Exhibit J and F–8 and 9.* An unsigned letter from someone in the Surety Association to the executive vice president of the Savings and Loan League, dated 8 June 1959. The letter transmits a copy of a memorandum prepared by the chairman of a subcommittee of the Surety Association relating to a meeting held between representatives of the two groups on 26 May 1959. The letter indicates that several copies are attached so that they may be distributed to "associates." Various provisions of Form 22 were discussed at the May meeting. The portion of the memorandum discussing Clause E is quoted in its entirety here:

FRAUD CLAUSE—The situation with respect to this clause was discussed. Attention was directed to the Surety Association Official Interpretation of November 1939. This reads:

"The fraud insuring clause adds to Insuring Clause [B] (on premises) and [C] (in transit) coverage for other forms of fraud or dishonesty similar to the forms of fraud or dis-

honesty enumerated in those insuring clauses, subject to the provisions of Insuring Clauses [B] and [C]."

As a matter of information, the complete record of the basis of the interpretation is attached. After thorough discussion, it was felt that the revision of the bond could be made on the basis of the official interpretation. Accordingly, Insuring Clauses [B] and [C] are to be redrafted and Insuring Clause [E] is to be deleted.

*Exhibit K.* An article by John F. FitzGerald, "Recent Developments in Form 22 Blanket Bond," from the Savings and Loan Annals 1965. This was an address made by Mr. FitzGerald to a Savings and Loan League Convention. Defendants allege that copies of this document were distributed to all League members. FitzGerald argues for the interpretation of Clause E written in 1939 by the Surety Association.

*Exhibit F–10.* An unsigned letter from someone in the Surety Association to a vice president of the Savings and Loan League, dated 22 June 1959. It refers to the letter of 8 June 1959, which is Exhibit J above. The writer indicates that the official interpretation of Clause E by the Surety Association purportedly attached to the 8 June letter was omitted. Several copies of the interpretation were enclosed with the 22 June letter.

The evidence offered by defendants does establish that the predecessor of the Savings and Loan League did negotiate with the Surety Association of America with respect to the development of Bond Form 22. This does not, however, mean that the interpretation advanced by the sureties is binding on the plaintiffs in this case. First, the interpretation advanced by defendants did not come out of the negotiations in 1938; the interpretation was merely a unilateral construction of the bond provision made subsequent to the negotiations by the Surety Association. An examination of the reasoning which led to

the sureties' interpretation, set out in the margin above, note 1, *supra*, demonstrates that the construction did not have its genesis in any representations or agreements by the Building and Loan League. No history or record of the negotiations was cited as the basis for the sureties' construction. In fact, the offer of proof submitted to this court reveals that the language of Clause E was not drafted as the result of the negotiations in 1938. The language of Clause E was taken, along with the major part of the bond, from Bond Form 5 which had previously been used for other types of insurance coverage. *See* Exhibit D.

■ Second, none of the plaintiff savings and loan associations were members of the League at the time of negotiations, nor in fact were they even in existence. Even if defendants could show that the predecessor to the Savings and Loan League had manifested its acceptance of the disputed interpretation during negotiations for the bond, this action of the League would not be binding on plaintiffs under any kind of agency theory in the absence of proof that they somehow had accepted, adopted, or otherwise ratified the actions of the League before their creation. For these reasons the official interpretation of the Surety Association cannot be introduced against plaintiffs to show the meaning of Clause E on the ground that it was the product of negotiations and hence binding on plaintiffs.

As an alternative ground for admissibility, defendants contend that the interpretation advanced by them is in the nature of a trade usage and therefore admissible to aid in construing the contract. A trade usage is "a uniform practice or course of conduct that is followed in certain lines of business or professions, or in some procedure or phase of such business or profession." Turner v. Donovan, 3 Cal.App.2d 485, 487, 39 P.2d 858, 859 (1935).

Before examining the substantive law relating to usages, the respective roles of the court and the jury must be defined. The law on this procedural aspect of the issue is well summarized by Williston:

> Whether a usage exists is a question of fact, though the evidence of it may be insufficient to warrant submission to the jury. Whether the facts are such that the parties must be assumed to have adopted the usage because of actual knowledge or duty to know is also a question of fact. On the other hand, the validity of the usage and its effect, if any, upon the contract of the parties is a question of law. 5 Williston on Contracts 118–19 (1961).

■ In determining whether defendants' offer of proof is sufficient for the issue to go to a jury, this court may consider the law of California relating to the admissibility of usage evidence. Rule 43, F.R.Civ.P. The California Supreme Court articulated the applicable law in Ermolieff v. R.K.O. Radio Pictures, 19 Cal.2d 543, 550, 122 P.2d 3, 5 (1942):

> The correct rule with reference to the admissibility of evidence as to trade usage under the circumstances here presented is that while words in a contract are ordinarily to be construed according to their plain, ordinary, popular or legal meaning, as the case may be, yet if in reference to the subject matter of the contract, particular expressions have by trade usage acquired a different meaning, and both parties are engaged in that trade, the parties to the contract are deemed to have used them according to their different and peculiar sense as shown by such trade usage. Parol evidence is admissible to establish the trade usage, and that is true even though the words are in their ordinary or legal meaning entirely unambiguous, inasmuch as by reason of the usage the words are used by the parties in a different sense. See Code of Civil Procedure, sec. 1861; Civil Code, secs. 1644, 1646, 1655; Jenny Lind Co. v. Bower & Co., 11 Cal. 194; Callahan v. Stanley, 57 Cal. 476; Higgins v. California Petroleum, etc., Co., 120

Cal. 629, 52 P. 1080; Caro v. Mattei, 39 Cal.App. 253, 178 P. 537; Wigmore on Evidence, vol. IX, sec. 2463, p. 204; Restatement, Contracts, secs. 246, 248; Hurst v. W. J. Lake & Co., 141 Or. 306, 16 P.2d 627, 89 A.L.R. 1228. The basis of this rule is that to accomplish a purpose of paramount importance in interpretation of documents, namely, to ascertain the true intent of the parties, it may well be said that the usage evidence does not alter the contract of the parties, but on the contrary gives the effect to the words there used as intended by the parties. The usage becomes a part of the contract in aid of its correct interpretation.

■ The question remaining is whether the offer of proof meets the requirements for establishing a usage.

The foundation for the introduction of evidence of custom or usage is a showing of a series of acts of a similar character performed at different times. (Ames Mercantile Co. v. Kimball S. S. Co., 9 Cir., 125 F. 332, 335.) . . . Evidence of the doing of an act at one time is incompetent to prove a custom to do so. (Wilson v. Travelers' Ins. Co., 183 Cal. 65, 70, 190 P. 366.)

Roberts Distributing Co. v. Kaye-Halbert Corp., 126 Cal.App.2d 664, 676, 272 P.2d 886 (1954). Merely proving that a usage exists is, however, not necessarily sufficient to permit introduction of the evidence to aid in the interpretation of a contract. In Miller v. Stults, 143 Cal. App.2d 592, 601–602, 300 P.2d 312, 318–319 (1956), the appellate court in California specified the additional requirements:

For evidence of custom to have potency it must be established that the parties to the contract were aware of the existence of the custom. . . . 'Evidence of usage is admissible only on the ground that the parties who made the contract were both cognizant of the usage, and must be presumed to have made their engagements with

reference thereto.' (Corey v. Struve, 16 Cal.App. 310, 320, 116 P. 975, 979)

. . . . . .

In People v. Seymour, 54 Cal.App.2d 266, at page 274, 128 P.2d 726, at page 730, this court stated:

A usage is operative upon parties to a transaction where and only where they manifest an assent to each other that it shall be operative, or where one of the parties knows or has reason to know that the other party intends to be governed by the usage, or where the usage exists in such transactions and is generally known by persons under similar circumstances. Rest., Contracts, § 247.

Similarly, after an extensive analysis of the admissibility of usage evidence, Williston concludes that

. . . unless the practice, admissibility of which is sought to be relied upon, conforms to standards of uniformity, general, widespread acceptance, and notoriety among those engaged in the trade or profession, it cannot serve to define the language or to annex a term to a contract by means of usage.

5 Williston on Contracts 106 (1961).

■ The offer of proof submitted by defendants must now be examined in light of these requirements. At the outset, certain exhibits must be ruled clearly inadmissible as not relevant to this discussion. Any evidence relating to a time after the date on which a bond was purchased by one of the plaintiffs cannot be used to establish that a usage was in existence at the time of contracting. This eliminates Exhibit H, the 1972 article by Harth, and Exhibit K, the 1965 article by FitzGerald. Since they were written after the bonds in question here were issued, they could not be used to show knowledge by plaintiffs, and any statements contained therein relating to past negotiations would be inadmissible unsworn evidence. Similarly, any evidence of revisions in 1970 would be irrelevant. A review of

the exhibits discloses that Exhibits A, B, C, D, E, F, and G are also irrelevant in that they in no way bear upon the interpretation of Clause E urged by defendants. This leaves for the court's consideration Exhibit I, the official interpretation of Clause E by the Surety Association, Exhibit J, a letter of transmittal and a copy of the 1959 memorandum relating to a meeting between the surety and savings and loan associations, Exhibit F–10, a 1959 letter transmitting copies of the 1939 interpretation, and the testimony of FitzGerald.

■ This evidence fails to establish a usage for several reasons. First, there is no evidence that the 1939 interpretation was communicated in any way to the Savings and Loan League until 1959. Thus, any usage must necessarily have developed between 1959 and the date the bonds were issued to plaintiffs. The bonds were issued as follows:

| From | To | Date |
| --- | --- | --- |
| Aetna Life and Casualty | Fidelity Savings and Loan (predecessor) | 15 September 1961 |
| Fireman's Fund Insurance Co. | Same | 15 December 1960 |
| General Insurance Co. of America | City Savings and Loan (predecessor) | 13 August 1964 |
| Fireman's Fund Insurance Co. | City Savings and Loan (predecessor) | 24 October 1961 |
| Fidelity and Deposit Co. of Maryland | Security Savings and Loan | 4 December 1962 |

Although not conclusive, the relatively short period between the time the interpretation urged by defendants was communicated to the Savings and Loan League and the date on which plaintiffs purchased their bonds makes it highly unlikely that the interpretation urged could have become "uniform[], general, wide[ly] accepted, and notori[ous]." *See* 5 Williston on Contracts, *supra*.

Second, the language of Clause E was negotiated at most once, i. e. in 1938 when the Surety Association and the predecessor of the Savings and Loan League met. Therefore, defendants' interpretation is not the product of a series of negotiations "of a similar character performed at different times." *See Roberts Distributing, supra*.

■ Third, the offer of proof fails to show that there has ever been any true "usage." All that the proof demonstrates is that a bond form was negotiated and that this form has been used many times since the negotiations. Nothing more has been shown than that a series of insurance contracts containing Clause E have been sold. Clause E has been nothing but an executory provision; it has never been tested by use. Thus, there is no evidence to demonstrate that the surety and savings and loan industries have in fact followed "a uniform practice or course of conduct" in using the language of Clause E. Unilateral legal opinions, even if communicated to another party, cannot be equated with the numerous arm's-length transactions which normally form the basis for finding the existence of a usage. Usages develop out of language which is tested by numerous instances of actual performance, not merely expected performances, or legal interpretations.

Finally, the relevant law quoted above requires a showing that the usage was known to the contracting party against whom it is raised or else so widely accepted in the trade that the other party is presumed to have known of it when

contracting. Defendants, however, fail to prove that plaintiffs had actual knowledge of the alleged usage or that the usage was so widespread that plaintiffs should be held to have contracted with knowledge of it. The evidence showing that copies of the 1939 interpretation by the Surety Association were transmitted in 1959 to the Savings and Loan League, Exhibits J and F–10, demonstrates only that the executive staff of the Savings and Loan League had knowledge of the legal opinion prepared by the Surety Association in 1939. The only other evidence relevant to this issue is the testimony of FitzGerald that the officers of the Savings and Loan League agreed with the sureties' interpretation at the 1959 meeting between representatives of the two industries and the memorandum prepared by the Chairman of the American Surety Association's negotiating committee allegedly reporting the substance of the 1959 meeting, Exhibit J. This document states that the 1939 interpretation was discussed and that "[a]fter thorough discussion, it was felt that the revision of the bond could be made on the basis of the official interpretation. Accordingly, Insuring Clauses [B] and [C] are to be redrafted and Insuring Clause [E] is to be deleted." This was not done, however. Defendants state FitzGerald will testify that the "reason for this is that although the participants all agreed that the official interpretation governed the meaning of these clauses, nevertheless, they felt the clauses themselves were sufficiently clear so that no changes [needed to] be made in the existing language in order to make explicit the official interpretation." Even assuming that the executive board of the Savings and Loan League did concur in the sureties' interpretation, there is no evidence to show that this interpretation was ever communicated to the plaintiffs before this court.

The only ground on which defendants can argue that the alleged usage is binding on plaintiffs, therefore, is that the usage was so widespread that everyone in the industry was aware of it. Yet defendants have failed to produce one shred of evidence of any kind to show that the interpretation was widely accepted in the industry. All that has been shown is that a unilateral legal interpretation was written by the Surety Association in 1939, that some twenty years later it was communicated to the executive board of the Savings and Loan League, and that a memorandum and the testimony of an officer, both from the Surety Association, indicate that representatives of the Savings and Loan League concurred in the interpretation at a 1959 meeting. Defendants' own evidence discloses that Clause E was not in fact redrafted in accordance with their interpretation after the 1959 meeting. No evidence has been presented which originated with the Savings and Loan League or one of its members indicating acceptance of the interpretation. Not a single instance in which Clause E has been construed as the defendants now suggest in practice has been shown to the court.

Implicit in the very concept of a trade usage is the requirement that it must be widely accepted and have been relied upon in numerous transactions. Where, in fact, a valid usage does exist the task of mustering evidence to prove its existence in court should be an effortless one. Yet, while defendants urge this court to find that there is enough evidence of a trade usage for the issue to go to a jury, they are unable to present anything more substantial than scanty, one-sided evidence. The court must not, however, ignore the underlying rationale which justifies the admission of trade usage by permitting defendants to introduce evidence which falls far short of the legal standards set out above. The evidence offered by defendants even if accepted by a jury could not establish that the plaintiffs had knowledge of the usage or that it was so widespread that plaintiffs may be held to have contracted with knowledge of it.

## CONCLUSION

Defendant's interpretation was not the product of the 1938 negotiations. Even if it had been, it would not be binding on plaintiffs. Defendants' evidence also fails, as a matter of law, to establish the existence of a valid trade usage or that it would be binding on plaintiffs. Clause E must therefore be interpreted without reference to the offered extrinsic evidence.