THOMPSON v. LOYAL PROTECTIVE ASSOCIATION.

1. INSURANCE —WAIVER OF DEFENSES — CHANGE OF OCCUPATION.
    On the statement of his occupation made by insured in his application for accident insurance, he was accepted and insured as a machinist by defendant. He died as the result of injuries sustained while employed in cleaning out a boiler, work which was not mentioned in the application. Defendant claimed that insured had changed his occupation and could not recover, under the conditions of the policy, the amount claimed. Before the trial, however, defendant, after making an investigation, tendered to the beneficiary a sum which it claimed was payable under the policy for death caused by accident while decedent was engaged as a common laborer. A smaller sum was payable if death resulted from sickness while decedent was engaged as a common laborer. *Held*, that defendant waived its right to claim that the beneficiary was entitled to the diminished benefit accruing for death by illness of one engaged in common labor.

2. SAME—CAUSE OF DEATH—TRIAL.
    Whether the cause of death of the insured was accident or sickness was, under disputed evidence, for the jury.

3. EVIDENCE—OPINION—CONCLUSION.
    Plaintiff's statement that decedent came home hurt, was, on defendant's motion to strike out the testimony, allowed to stand, and plaintiff afterwards testified fully as to the condition of decedent and the appearance of injury upon his body. *Held*, that the ruling was not so prejudicial to defendant as to justify the reversal of plaintiff's judgment.

4. INSURANCE—INSTRUCTIONS TO JURY—BURDEN OF PROOF.
    On the trial the court properly charged the jury that the burden of proof was on the plaintiff who must show, in order to recover, that decedent's death was caused alone and independently of other causes by a bodily injury sustained by accidental means, leaving upon the body marks of contusions or wounds visible to the naked eye: that the jury must find that death resulted from an accident which left upon the body marks of contusions or wounds visible to the naked eye: such being the phraseology and conditions of the policy.

5. Same—Words and Phrases.

It was not error to instruct the jury that "the mark visible to the eye on the body need not be a bruise, contusion, laceration, or broken limb, but may be any visible indication of an internal injury which may appear within a reasonable time after the injury is received, such, for instance, as discoloration of the part of the body affected."

6. Same—Wounds.

Wounds were properly defined as "injuries of every description that affect either the hard or soft parts of the body, and it comprehends bruises, contusions, fractures, luxations," etc., or any lesion of the body.

7. Same—Evidence—Affidavit.

Where a policy of insurance required satisfactory proofs of death, and, after the submission of plaintiff's proofs of death, further proofs were requested by defendant, the court, which held the proofs to be sufficient, did not err in receiving in evidence an affidavit of the physician of decedent obtained by plaintiff and submitted to defendant.

8. Same—Tender—Payment into Court.

While the trial court might have entered upon the judgment rendered a credit to defendant of the amount tendered and paid by it into court, the judgment will not be reversed for the omission so to do, but the error will be rectified by an order of this court crediting the amount so tendered in part satisfaction of the judgment.

Error to Bay; Collins, J. Submitted June 20, 1911. (Docket No. 130.) Decided September 29, 1911.

Assumpsit by Mary Thompson against the Loyal Protective Association upon a policy of insurance. Judgment for plaintiff. Defendant brings error. Affirmed.

*Lee E. Joslyn*, for appellant.

*E. P. McCormick* (*George P. Cobb*, of counsel), for appellee.

McAlvay, J. Plaintiff, as beneficiary named in the certificate issued by defendant to her husband, Marcus Thompson, during his lifetime, recovered a judgment for $520.84 in the circuit court for Bay county.

This certificate was issued September 9, 1904, upon the

usual blank application for membership furnished by defendant, wherein it was agreed, among other things, that it was "subject to all conditions and agreements contained in the policy;" that for any injury received in any occupation or exposure, while temporarily or otherwise engaged therein, which is rated by the association as more hazardous than the class in which he was accepted, he should receive only such benefit as is allowed, in the manual used by the association at the date of the application, for injuries received in such more hazardous occupation or exposure; also that there could be no claim made for indemnity "for any disability where there shall be no external or visible sign or symptom of disease or bodily injury."

Marcus Thompson made his application as a "machinist," and as such was accepted in class C, and his beneficiary was, under the policy, entitled to receive, in case of his death during membership, if such death was the result of sickness, the sum of $100; if caused "as the result, alone and independently of all other causes, of bodily injuries as defined," the sum of $500. Bodily injury was defined, "injury includes only the result of external, violent and accidental means, leaving on the body marks of contusion or wounds visible to the naked eye." The policy also contained the same stipulation and condition, relative to injury received in any occupation or exposure while temporarily or otherwise engaged therein, as was contained in his application.

Marcus Thompson died August 9, 1909, while his certificate or policy was in full force, and his widow, the beneficiary, has brought suit for $500, the death benefit agreed to be paid in case of death by external, violent and accidental means.

At the time of the claimed injury, he had been employed as "boiler house foreman" at the plant of the Carrolton sugar factory since about July 1, 1909, under an agreement for the entire season or "campaign," as the

beet sugar season is called, at 20 cents per hour, the going wages of a machinist in that plant while engaged in fitting up for the active campaign, and after it opened at $85 per month. The chief engineer of the sugar factory employed Mr. Thompson as boiler house foreman. He knew that he was a machinist. He testified that the term "boiler house foreman" is a term in common use in sugar factories for that kind of a man. Such employé had entire charge of the boiler house and such men as were necessary. During the campaign, there would be five men under him, and, while fitting up, any men he might require. His duties were to put the boilers in shape; to see that the boilers were cleaned, and the flues, stay bars, and braces in the boilers were all right; to see that the pumps and the valves were in working order; and take the valves out, if necessary, and grind them and reseat them to fit, so that the boiler house would stand the annual inspection by the insurance company. The position required a mechanic, a man skilled in tools, and with a knowledge of machinery. In this factory the boiler house was 50 by 150 feet, and contained 11 boilers connected with steam and water pipes and two feed pumps. At the time of the claimed injury, Mr. Thompson had two men (steam fitters) working under his directions. The testimony relative to the nature of his employment, his authority, duties, and responsibilities is not contradicted.

On August 4, 1909, during such employment, while he was inside one of these boilers, cleaning it, and while the two steam fitters were working near him on the same or another boiler, at about quitting time, Mr. Thompson called out to them that he had hurt himself, and wanted them to help him out. They succeeded in getting him out with difficulty. He put his hand on his hip and started to walk away, limping considerably. He washed up and went home. When he arrived at home, he immediately went to bed, without eating. His wife went to a drug store, procured a bottle of liniment, and applied it. On his right side, between

the hip and the back, his wife testifies there was a red, inflamed mark, about half the size of her hand. The family physician was called, and came the next day. He found Mr. Thompson in bed, suffering much pain. On examination he found a discoloration of the skin, swelling, and redness over the right kidney and hip. He treated him externally, and gave him medicine, and visited him daily until he died, August 9th, in great agony. The doctor testified that this injury caused his death; that it was the cause of the acute nephritis which followed; that the death was wholly due to the external injury. He had formerly treated him for nephritis, from which he had entirely recovered. No other expert testimony was offered.

Defendant upon the trial contended that the death of plaintiff's decedent was caused by sickness, and not accident, and that at the time of his death he was engaged in employment not insurable under the classifications and occupations provided in the manual and under the policy.

Of the errors assigned, such as are material under this record will be considered. Upon the second contention above stated, the trial court held that the record showed that defendant had waived the defense that decedent, at the time of his claimed injury, was engaged in an occupation of different classification from that in which he was insured. The record sustains such determination. Defendant made a tender to plaintiff, with its plea and notices, and has kept such tender good by paying into court the sum of $100, and $16.30 costs. Under the provisions of the policy and the classifications of the manual then in use, there was no employment mentioned and classified which provided for payment of benefit for death as a result of sickness the sum of $100, which would not be payable under the conditions of the policy or certificate issued, and recoverable under its provisions, because such sum was payable only to those in that classification. Under the classification in which defendant now, and in one part of the notice under the plea, claims the work de-

cedent was engaged in at the time of the accident would place him, he would, in case of death by accident, be entitled to only $100, and if caused by sickness to $20. The tender is inconsistent with the claim that death resulted from sickness while employed as a common laborer. This tender was made by defendant after full knowledge of all the facts disclosed by the proofs of death furnished by plaintiff August 17, and September 2, 1909, showing exactly what decedent was doing at the time of the claimed injury, and after having sent a representative, on October 4, 1909, to make a further investigation "relative to any accident received by Mr. Thompson, to make inquiries relative to the matter, we caused an investigation to be made as to the occupation in which Mr. Thompson was engaged at the time of his death." The quotation is taken from the testimony of defendant's secretary. He further testifies that this investigation was made "because of the answer to question 10, in Exhibit 3 (plaintiff's proof of death), stating that the deceased was working in a steam boiler, getting it ready for the fall campaign," thereby admitting notice sufficient to require further inquiry. There can be no question but that this conduct should be held to amount to a waiver.

Certain requests to charge were refused by the court, and errors are assigned upon such refusals. As these requests were all formulated upon the theory that the employment of decedent at the time he met his death was in issue, they need not be discussed, for the reason that, under the ruling of the trial court which we have just considered, that question was not in the case.

The errors assigned upon matters of evidence, relative to the employment of decedent as boiler house foreman and the duties, qualifications, etc., of such employment, are also eliminated by the same ruling, as are also errors assigned upon the exclusion of interrogations relative to classifications and occupations and benefits thereunder.

A motion for a directed verdict, which was denied, need not be considered, in so far as the reasons urged refer to

change of occupation.  The other reasons were that the proofs of loss were not sufficiently specific, and there was no proof that death was caused " as the result, alone and independently of all other causes, of an injury resulting from external violence and accidental means, leaving upon the body marks of contusion or wounds visible to the naked eye."  The trial court correctly held that the proofs of loss were sufficient, as will appear later in this opinion. He submitted the disputed question of fact as to the cause of the death of plaintiff's decedent to the jury. This was warranted by the evidence in the case.

While plaintiff was testifying as to where her husband had worked up to and including the day of his claimed injury, she was asked by her counsel:

"*Q*.  Then what happened, if you know ?
"*A*.  He came home hurt.
"*Defendant's Attorney:* Wait a moment.  I object to the statement that he came home hurt.  That is a conclusion as to whether he was hurt or not; as to what his condition was, I have no objection.
"*The Court:* The answer may stand.  (Defendant excepted.)  That night was Odd Fellows' night and he said to me—
"*Q*.  You can't state what he said.  What did he do that evening ?"

Error is assigned because the answer was not stricken out.  It would have been proper to have stricken the objectionable answer out.  The context, however, shows that this was not called out by her counsel, who at once stopped her, with a caution as to her answers.  She later testified at length as to his condition and the visible evidence of injury on his body.  Allowing the answer to stand was not prejudicial error.

Errors are assigned upon certain portions of the charge, which require attention.  During the trial, when the questions of law herein referred to were under consideration and the trial judge announced his conclusions, he said:

" That leaves one question to go to the jury, and that

is the question as to whether or not the death of Mr. Thompson resulted from sickness or from accident."

The charges given to the jury, which are claimed to be erroneous, are as follows:

"(1) Now the burden of proof in this case is upon the plaintiff, and the plaintiff must show, before the plaintiff can recover, by the preponderance of proof—that is, by the greater weight of the testimony—that the plaintiff's death was caused, alone and independently of other causes, by a bodily injury, which bodily injury must have been by accidental means, leaving upon the body marks of contusion, or wounds, visible to the naked eye. That states the ultimate facts which the plaintiff must prove by the greater weight of testimony, before the plaintiff can recover.

"(2) You will observe, gentlemen of the jury, that this involves proofs of two points: First, that the death was the result of accidental injuries, and, second, that these accidental injuries left upon the body marks of contusion, or wounds, visible to the eye. Both of these points are to be proved, before the plaintiff can recover, and you will have that thought in mind in respect to all I say hereafter in giving the charge.

"(3) The visible marks on the body required by the policy need not become visible immediately upon the happening of the accident, in order to entitle plaintiff to recover; but it is sufficient if they appear in some reasonable time thereafter. The mark visible to the eye on the body required by the policy need not be a bruise, contusion, laceration, or broken limb, but may be any visible indication of an internal injury which may appear within a reasonable time after the injury is received, such, for instance, as discoloration of the part of the body affected.

"(4) I think perhaps I should explain that and make it a little more clear. The defendant's claim was that the cause of death was illness, and has made a tender into court which has been put in evidence, and if the death resulted from illness then the plaintiff is entitled to the money, and will get it without further ceremony, and that leaves then the issue for you to try, which has been submitted to you, the issue of whether or not death was or was not caused by the accident."

We find nothing objectionable in the first and second

paragraphs quoted, and as defendant claims that they refer to the waiver we have already passed upon they do not require discussion.

In considering the objections to the third paragraph, urged to be erroneous in connection with the first and second, we find that the court charged correctly upon the burden of proof, and followed by using the exact words of the policy, with a statement of what was required to be proven to warrant a recovery by plaintiff.

The part of the third portion claimed to be erroneous is—

"The mark visible to the eye on the body required by the policy need not be a bruise, contusion, laceration, or broken limb, but may be any visible indication of an internal injury, which may appear within a reasonable time after the injury is received, such, for instance, as discoloration of the part of the body affected."

This was immediately followed by the following sentence, which must be read in connection with it:

"In legal medicine the word 'wounds' means injuries of every description that affect either the hard or soft parts of the body, and it comprehends bruises, contusions, fractures, luxations, etc. In law the word means any lesion of the body."

The policy sued upon reads:

"It is understood and agreed  *  *  *  that injury includes only the result of external violent and accidental means leaving on the body marks of contusions or wounds visible to the naked eye."

The policy distinguishes between contusions and wounds, and includes both. The definition of "wounds" given by the court was a correct one. It is authorized by 4 Cooley's Briefs on the Law of Insurance, p. 3185; Black's Law Dictionary, p. 1245; Bouvier's Law Dictionary, p. 1247; *State* v. *Owen,* 5 N. C. 452 (4 Am. Dec. 571). The jury has been charged explicitly, in substance, that it must appear that the death was caused, alone and independent of other causes, by a bodily injury sustained

through external violence and accidental means, leaving upon the body marks of contusion, or wounds, visible to the naked eye. The third paragraph excepted to explains and defines to the jury the meaning of the term "visible mark" and the word "wounds," as used in the insurance contract. There was no error committed in such instruction.

The defendant claims error was committed in the fourth paragraph excepted to, in that it did not correctly state its claim. The record shows that defendant did make such a claim, both before and during the trial, and that defendant did not, as is claimed in its brief, make a different claim as soon as it learned the facts. No error was committed.

Error is assigned because the court permitted the affidavit of the attending physician, which had been furnished on request for further proofs of death, to be received in evidence when offered by plaintiff. The contention on the part of defendant was that the proofs of loss were insufficient, and this affidavit was offered to meet that claim. It was received, but not read to the jury. The policy required satisfactory proofs of death. Further proof was requested, and this affidavit was furnished. No further claim in that regard was made until after suit brought. Defendant offered the proofs of loss, except this affidavit, on its own part. It was held by the court that the proofs were sufficient. It was not error on the part of the court to receive and consider this affidavit.

The remaining error assigned relates to the instruction of the court as to the verdict which should be found in case plaintiff recovered. The court charged upon this matter:

"Now your verdict in this case will be either $520.84, or it will be no cause of action."

And further:

"If you should find that it was the result of sickness, and not as the result of an accident, then your verdict

will be no cause of action; that is to say, the plaintiff's recovery, if any, is $520.84."

Defendant had made a tender into court of $100 and costs, claiming that Mr. Thompson's death was caused by sickness, and not accidental bodily injury. Under the evidence, the court was required to submit this question to the jury. As we understand it, defendant's contention is that the court should have in some way, not pointed out in its brief, credited or allowed it the benefit of the tender. Whether something might have been said in the charge, or some action might have been taken by the court afterward, it is certain that plaintiff could not have accepted the tender without abandoning her case. The payment into court was voluntary under the statute. If the tender had been found sufficient, the plaintiff could not recover costs and interest from the time of tender, but would have been liable to defendant for such costs. Sections 10405, 10406, 3 Comp. Laws; *Snyder* v. *Quarton,* 47 Mich. 211 (10 N. W. 204). The contrary occurred. The jury found the full amount claimed for plaintiff. Judgment was entered upon the verdict as a matter of course. Counsel for defendant sat by and did not call the attention of the court to the matter. It was in the power of the court, at the time, to have credited the amount tendered upon the judgment, and we presume he would have done so, if asked. To omit the matter from his charge was not error, nor will this court reverse the case because the court did not see that due credit was given upon the judgment. It is a matter within the power of this court to rectify without injury or prejudice to defendant. Upon turning over to plaintiff, or her attorney, the amount of $116.30 by the clerk of the circuit court and receiving receipt therefor, he will enter as a part payment and satisfaction upon such judgment the sum of $100, to apply on damages, and $16.30, to apply on costs of suit.

The judgment of the circuit court is affirmed.

MOORE, BROOKE, BLAIR, and STONE, JJ., concurred.