## Ella A. Pixley, Appellant, v. Illinois Commercial Men's Association, Appellee.

### Gen. No. 20,891.    (Not to be reported in full.)

Appeal from the Municipal Court of Chicago; the Hon. HUGH J. KEARNS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed October 6, 1915.

## Statement of the Case.

Action by Ella A. Pixley, plaintiff, against the Illinois Commercial Men's Association, defendant, in the Municipal Court of Chicago, to recover on a certificate of insurance wherein plaintiff was designated as beneficiary.

The essential facts are undisputed. It appears that prior to his death, insured was subject to severe at-

*See **Illinois Notes Digest**, Vols. XI to XV, and **Cumulative Quarterly**, same topic and section number.

tacks of headache, and on two or three occasions, many years before his death, he had taken morphine to relieve the pain; that on Friday, September 22, 1911, he told a woman servant at his apartment that he had not been well, and was nervous; that the following morning he appeared at the apartment and said to the woman who opened the door for him, "I am awfully sick, and want to come in and go to bed"; that he also said that he did not want a doctor, but merely wanted to rest; that he went into his bedroom and shut the door, and about noon, he sent word to his wife "that he was at the apartment being taken care of, and for her not to worry"; that he ate nothing that day; that about two o'clock in the afternoon, one of his servants went to his bedroom door and asked him if he wanted anything, receiving a negative reply; that he was then standing, holding a bottle containing small white tablets; that he had two or three of the tablets in his hand, and was counting out others; that in reply to an inquiry as to what he was taking, he said it was "something to ease the pain" in his head, "some medicine he got at the drugstore"; that he asked for a glass of water, and handed the bottle containing the tablets to the woman, who took it from the room and left it in a bedroom adjoining, where it was found the next day; that about half an hour later, he became nauseated, and went into the bathroom, but returned to his bedroom a few minutes later; that about six o'clock in the evening, he came out, partly dressed, went to the kitchen, where he chatted with the woman for an hour and a half; that he said he felt better, and thought he would go to his farm; that later he came out of his bedroom dressed and with his hat and overcoat on, smoking a cigar; that he sat down and talked for another half hour, and then, saying that he felt "shaky," returned to his bedroom, undressed and went to bed; that during the night he grew worse, and in the morning two physicians were called, but

they were unable to arouse him, and he died about eleven o'clock Sunday evening; that an autopsy was had, and the doctors making it certified "that the findings were consistent with morphine poisoning," and "that no other cause of death was found." It was stipulated in the record, however, "that the deceased died from àn overdose of morphine."

From a judgment for defendant, plaintiff appeals.

BARTLETT & CHAMBERLAIN and BEACH & BEACH, for appellant.

RYAN & CONDON, for appellee; IRVIN I. LIVINGSTON, of counsel.

MR. JUSTICE FITCH delivered the opinion of the court.

## Abstract of the Decision.

1. INSURANCE, § 745*—*when by-laws part of contract.* In an action to recover on a policy of insurance on the life of one who died from an overdose of morphine self-administered, where the policy makes the by-laws and application a part of the contract, it is not only necessary that the beneficiary show that the death was "accidental," as provided by the terms of the policy, but also that it fell within the provision of the by-laws limiting the insurer's liability to death caused by "external, violent or accidental means," and not within the exceptions in the by-laws and application relieving the insurer from liability, where death was caused by the "intentional or unintentional taking of poison," or while deceased was under the influence of any narcotic.

2. INSURANCE, § 419*—*what agency of accidental death.* A death which is the result of an accident, or is unnatural implies an external and violent agency as its cause.

3. INSURANCE, § 419*—*what constitutes accidental death.* An accidental death is one which is undesigned or unintended, the word "accidental" being, in such connection, the antithesis of "intentional."

4. INSURANCE, § 419*—*when death accidental.* In an action to recover on a policy of insurance which provided for the payment of an indemnity upon the "accidental death" of insured, where the evidence shows that insured died from an overdose of morphine self-administered, that morphine in small quantities is not poisonous

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

but only when taken in excess, and that his taking of the overdose was unintentional, *held* that the death was "accidental."

5. INSURANCE, § 419*—*when death by poison is by accidental means.* Where a certificate of insurance provided for payment of a prescribed indemnity in case of death caused by "external, violent and accidental means," *held* that a death due to an overdose of morphine, taken by insured without intent to cause death thereby, was within the meaning of the words quoted.

6. INSURANCE, § 419*—*when evidence sufficient to show accidental death.* Evidence in an action to recover on an insurance policy on the life of one who died from an overdose of morphine self-administered, examined and *held* to show that deceased did not intentionally take a poisonous amount, but either acted in ignorance of the effects of morphine in general, or because he did not know that such an amount would affect him injuriously.

7. INSURANCE, § 419*—*when death by morphine defeats recovery.* In an action to recover on a certificate of insurance, where it was stipulated that insured's death was due to "an overdose of morphine," and where it appeared that morphine was a narcotic, an overdose of which was poisonous, and that at the time of death insured was under the influence thereof, *held* that such stipulation precluded plaintiff from recovering, it appearing that the application for such insurance, signed by plaintiff, expressly excepted, as grounds of liability of defendant thereunder, such injuries as insured might receive "while under the influence of * * * narcotics, or in consequence thereof, * * * nor from intentional or unintentional taking of poison," such stipulation being necessarily construed as an admission that insured's death was due to a poisonous dose of morphine.