## WARBENDE v. PRUDENTIAL INS. CO. OF AMERICA.

### No. 6419.

Circuit Court of Appeals, Seventh Circuit.

May 27, 1938.

750

Nathaniel Rubinkam and William S. Allen, both of Chicago, Ill., for appellant.

Philip Baim, of Chicago, Ill., for appellee.

Before SPARKS and TREANOR, Circuit Judges, and LINDLEY, District Judge.

TREANOR, Circuit Judge.

This is an appeal from a judgment of the District Court in favor of the plaintiff rendered in a suit on double indemnity riders attached to two policies in which the plaintiff was named as the beneficiary. Each policy provided for the payment of $2000 which was termed the "face amount of insurance"; and each policy also provided that in event of death by accidental means an additional $2000 should be paid to the beneficiary as "accidental death benefit." The instant suit involves only the sum payable in the event of death by accidental means. The only provision in the policies of insurance which is material to the determination of this appeal is as follows: " * * * (the Accidental Death Benefit) * * * shall be payable in addition to the Face Amount of Insurance immediately upon receipt of due proof that the death of the Insured occurred * * * as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means, of which, except in case of drowning or of internal injuries revealed by an autopsy, there is a visible contusion or wound on the exterior of the body * * * provided however, that no Accidental Death Benefit shall be payable if the death of the Insured resulted from suicide, while sane or insane; * * * "

The propositions relied upon by defendant, and to which are related all the alleged errors of the trial court, may be summed up as follows: (1) The plaintiff did not prove that death was not the result of suicide; (2) there was no visible contusion or wound on the exterior of the body; (3) there was no proof that death resulted from internal injuries which were revealed by an autopsy, and (4) the burden was on the plaintiff to prove that death was caused in the manner and by the means specified in the double indemnity riders.

We are of the opinion that the evidence bearing on the question of suicide or accidental death was sufficient to require the trial court to submit that question to the jury.

The insured's body was found on the floor of his garage at the rear of his automobile and about two feet from the exhaust pipe. The body was in a sitting posture supported by the rear wall of the garage and wire netting which divided

the garage into two parking spaces. In the words of one witness, "he was sitting flat on the floor with his head kind of slumped and his body all slumped down." The body was discovered in the forenoon of July 3. The insured had left his home on the morning of July 1 and had gone to his place of employment. He telephoned to his wife at noon, as was his custom, but did not return to the house that evening. The garage was a block away from deceased's house. About three o'clock in the afternoon of July 1st the insured asked permission of his employer to go downtown for the rest of the afternoon. His general appearance was as usual. A week or ten days prior to July 1st the insured had indicated to his employer that he would like to take his wife on an automobile trip. The employer noticed no change in insured's demeanor during the week prior to his death. There was no testimony on which the jury could have determined when the insured returned to the garage, but the physical condition of the body, when found, was such that it was apparent that death must have occurred not later than the evening or night of July 1st or early in the morning of July 2nd.

The automobile engine was not running when the body was discovered, but the key was in the ignition lock and the gas tank was half full. One witness testified that the ignition switch was on and another testified that it was turned off. The deceased's coat and hat were lying on the seat of the automobile. It may be that the insured sat down on the floor of the garage and inhaled the exhaust fumes for the purpose of causing his death. But the facts are not inconsistent with a reasonable hypothesis of accident; and we cannot say that the hypothesis suggested in plaintiff's brief is unreasonable.[1]

The conclusion is inevitable that the deceased's death was caused by carbon monoxide poisoning; and the only reasonable inference from the evidence is that the poisoning resulted from the inhaling of fumes which came from the exhaust pipe of the automobile. But the condition and position of the body and the physical facts and circumstances existing at the time of the discovery of the body do not compel the inference that the insured deliberately inhaled the exhaust fumes for the purpose of causing his death. And the activities and conduct of the insured immediately prior to his death tend to show an absence of any formed intention to take his own life and the absence of any reason or motive for such an act.

Whether death is accidental or suicidal is a question of fact to be determined by the jury or court from all the evidence; and there is no general presumption of law that death is accidental. The Supreme Court of Illinois has held that when the evidence shows that the condition of the deceased prior to his death is such as to show no reason or motive for self-destruction, there is a presumption that the deceased did not take his own life. In Wilkinson v. Aetna Life Insurance Company,[2] the opinion of the court sets out some of the evidence which related to the question of the manner of death of the deceased, and added the following statement (pages 211, 212, 88 N.E. page 552): "In addition to those facts the plaintiff, in support of the theory that Wilkinson's injuries were accidental and not self-inflicted, had the right to invoke the presumption that men in the condition in which the evidence showed Wilkinson to be just prior to his injury do not ordinarily take their own lives. In the Weise Case [Fidelity & Cas. Co. v. Weise] (182 Ill. 496) on page 498

---

1 "The fact that the insured before going to the rear of the car took off his hat and coat and placed them neatly in the car, and having gone to the rear of the car, placed newspapers on the floor where he was going to sit, is certainly not indicative of the actions of a person about to commit suicide. It does not seem reasonable that a man about to commit suicide would be so meticulous about his clothing, and take such precautions to keep them from becoming soiled, especially if he did not intend to be alive to wear them again. The evidence disclosed that there was only about a foot and a half between the car and the wire

mesh, and that the car was closer to the other end of the stall and the insured. it appeared, was a big man about 6 feet tall and weighing about 200 pounds. It does not seem reasonable that a large man would squeeze through a narrow aperture and burden himself with such inconvenience, and then put newspapers on the floor and sit on the hard concrete, if as appellant contends he were going to commit suicide, when he could have accomplished such an intention by sitting comfortably in his car." (Quoted from Appellee's brief.)

2 240 Ill. 205, 211, 88 N.E. 550, 25 L. R.A.,N.S., 1256, 130 Am.St.Rep. 269.

[55 N.E. 540] this court said: 'The presumption of the law is that all men are sane and possessed of the love of life, are animated by the instincts of self-preservation and the natural desire to avoid personal injuries and death. This presumption, in the absence of countervailing proof, may be sufficient, within itself, to establish prima facie that death occurred otherwise than by self-destruction and to cast upon the defendant company the burden of producing evidence on the point.' While this presumption is a rebuttable presumption and may be overcome by proof, when not rebutted by proof or the circumstances in evidence surrounding the death, such presumption, when taken with the admission that the injuries which caused death were violent and external, is sufficient to require the court to submit to the jury the question whether the injuries which caused the death of Wilkinson were accidental or self-inflicted."

■ It is our opinion that there was sufficient evidence to create a question of fact for the jury on the issue of accidental death or suicide; and the jury having found in favor of the plaintiff on this issue, we cannot disturb that finding.

The evidence discloses that there were scarlet blotches on the skin of the face and on the trunk and extremities of the deceased, and that these scarlet blotches were characteristic of carbon monoxide poisoning.[3] The blotches constituted visible marks on the exterior of the body and were evidence that the bodily injuries, which resulted in death, were effected by carbon monoxide poisoning. But the defendant contends that the scarlet blotches were not contusions or wounds within the meaning of those words as used in the policy. In the case of Mutual Life Insurance Company v. Schenkat[4] this court had occasion to construe the words "contusion or wound" in an accidental death provision which required that there be "evidence by a visible contusion or wound on the exterior of the body." In that case death had been caused by sodium fluoride poison. The stipulation of facts recited: " * * * lips and tongue swollen; became pale; body discolored, * * *" This court concluded that the foregoing physical marks satisfied the requirement of "evidence by visible contusion or wound on the exterior of the body." In reaching such conclusion this court cited and quoted with approval from the case of Thompson v. Loyal Protective Association.[5] In the policy which was involved in the Thompson Case there was a provision that " * * * the injury includes only the result of external violent and accidental means leaving on the body marks of contusions or wounds visible to the naked eye." The trial court had instructed the jury that in legal medicine the word "wounds" meant "injuries of every description that affect either the hard or soft parts of the body," and that it comprehended "bruises, contusions, fractures, luxations, etc.," and that "in law the word means any lesion of the body." The Supreme Court of Michigan held that the trial court's instruction correctly stated the meaning of the word "wounds." And it appears from the facts of that case that the contusion or wound consisted of a "discoloration of the skin, swelling and redness over the right kidney and hip;" and there was no contention that the "contusion or wound" was caused by the impact of any solid body upon the body of the deceased.

■■ It is true that "contusion," etymologically considered, suggests an injury which is the result of the impact of a blow upon the exterior of the body.[6] But for the purpose of our present inquiry the

---

[3] "The causes of blotches of this kind is usually carbon monoxide. It is an odorless gas. It affects the body by combining with the hemoglobin that is contained in the red blood cells in the blood and produces carbon monoxide hemoglobin. It prevents the red blood cells from carrying oxygen, and without the oxygen the organism dies." (Testimony of Dr. Kiley, Coroner's physician of Cook County.)

"A person who had died from carbon monoxide poisoning we observe a very peculiar characteristic, scarlet color of the skin and mucous membrane, which is due to the fact that the blood has become a carbon monoxide mixture in the hemoglobin with which it is united. It appears more or less evenly throughout the entire surface of the body." (Testimony of Dr. A. C. Tenney.)

[4] 7 Cir., 62 F.2d 236.

[5] 167 Mich. 31, 132 N.W. 554, 557.

[6] In Webster's New International Dictionary the word "contusion" is defined as follows: "A bruise; an injury attended with more or less disorganization of the subcutaneous tissue and effusion of blood beneath the skin, but without breaking of the skin."

meaning cannot be so restricted. It is obvious that the purpose of requiring that there be a "visible contusion or wound on the exterior of the body" is to have visible, physical evidence of the operation of the "external, violent and accidental means," which are alleged to have effected the bodily injuries. In our opinion "visible contusion," as used in the policy, includes any morbid change in, or injury to, either the subcutaneous tissue, or the skin, which produce markings or discolorations that are visible upon the exterior of the body. It is not material whether the "visible contusion" results directly from the operation of the "means" upon the exterior of the body, or indirectly from internal injuries which are effected by the action of the "means." "The accidental operation of external means may be wholly internal,"[7] and yet the internal injuries may extend to the subcutaneous tissue or into the layers of the skin. The visibility of the "contusion" may be due to the discoloration either of the injured tissue under the skin, or of the injured skin itself, or of both.

The scarlet blotches which were upon the exterior of the body of the insured were caused by the action of the carbon monoxide and were connected with the "internal injuries" which resulted in the death of the insured. When carbon monoxide is inhaled into the lungs it passes into the blood and combines with the hemoglobin contained in the red blood cells and cuts off the supply of oxygen to tissue cells. According to medical testimony the scarlet blotches were the result of death and decomposition of tissue cells, the death and decomposition of the cells resulting from the absence of oxygen in the red blood cells.

The Supreme Court of Illinois has had occasion to discuss and define the word "wounds."[8] It was stated in the opinion that "in law the word means lesion of the body, and the correct definition of a lesion is a hurt, loss or injury." The word "lesion" is defined in Webster's New International Dictionary as "Any morbid change in the structure of organs or parts; hence the diseased or injured region." The Illinois Supreme Court's definition of "wound" excludes the necessity of a breaking or cutting of the skin and is broad enough to include an injury to the subcutaneous tissue and to the skin, which has resulted from carbon monoxide poisoning and is revealed by scarlet blotches.

We are of the opinion that the scarlet blotches were visible contusions or wounds within the intent and meaning of the accidental death provisions in the policies.

Death from carbon monoxide poisoning which results from the inhalation of carbon monoxide is death "through external, violent and accidental means," within the intent and meaning of the policies under consideration. The Supreme Court of Illinois, in Healey v. Mutual Accident Association,[9] held that death by accidentally taking and drinking poison is a death produced by bodily injuries resulting from "external, violent, and accidental means." In reaching that conclusion the court relied upon, and approved, decisions which had held that death from drowning, or from inhaling gas, was the result of injury received by external and violent means.[10]

[7] Miller v. Fidelity & Casualty Co., C. C., 97 F. 836, 837. "The taking of poison; * * * the inhaling of gas; * * * under ordinary circumstances are all accidental means by which bodily injuries are produced through which death sometimes results." Christ v. Pacific Mutual Life Ins. Co., 312 Ill. 525, 531, 144 N.E. 161, 163, 35 A.L.R. 730.

[8] People v. Durand, 307 Ill. 611, 624, 139 N.E. 78, 83. "In medicine the word wounds means injuries of every description that affect either the hard or soft parts of the body, and it comprehends bruises, contusions, fractures, luxations, etc. In law the word means any lesion of the body, and the correct definition of a lesion is a hurt, loss or injury. 2 Pope's Legal Definitions, 1684; Thompson v. Loyal Protective Ass'n, 167 Mich. 31, 132 N.W. 554. Under the statute of 9 Geo. IV, (chapter 21, § 12,) it has been held in England that in criminal cases to make a wound there must be an injury to the person by which the skin is broken through. 2 Bouvier's Law Dict. p. 851. The decisions under this statute have no binding force in this state, as the statute in question was never the law in this state."

[9] 133 Ill. 556, 25 N.E. 52, 9 L.R.A. 371, 23 Am.St.Rep. 637.

[10] "It is firmly established that an injury or death caused by the unconscious or involuntary inhalation of poisonous gases, is an injury or death caused by accidental means. * * *" Cantrall v. Great American Casualty Co., 256 Ill.

754

The decisions of this and other Federal Circuit Courts of Appeals are in accord.[11]

We conclude that the evidence was sufficient to support a finding that the plaintiff furnished "due proof that the death of the insured occurred * * * as a result directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means, * * *" And in view of our construction of the language, "visible contusion or wound on the exterior of the body," unquestioned evidence established that there were visible contusions and wounds upon the exterior of the body which were evidence of the "means" and were the result of the bodily injuries which were effected by the "means."

 The provision in the policy, "of which, except in case of drowning or of internal injuries revealed by an autopsy there is a visible contusion or wound on the exterior of the body," evidently is intended to require that the fact of "external, violent and accidental means" be evidenced by "a visible contusion or wound on the exterior of the body," except in case of drowning or of internal injuries which are revealed by an autopsy. That is, if the internal injuries, which cause death, are revealed by an autopsy, it is immaterial whether there be a visible contusion or wound upon the exterior of the body. But if there is a visible contusion or wound on the exterior of the body which evidences "the means," it is immaterial whether "internal injuries" be revealed by an autopsy or by other satisfactory evidence. The provision "except in case of drowning or of internal injuries revealed by an autopsy" does not impose a burden upon the claimant, but when there are internal injuries *revealed by an autopsy* the provision relieves the claimant ·of any disadvantage in making proof of the claim in case the "means" have not caused a contusion or wound on the exterior of the body. Of course, in either case, the plaintiff must establish · that the "bodily injuries," which cause death, are effected solely

through external, violent and accidental means.

In view of the foregoing it is not material whether there was proof of an autopsy, and it is unnecessary to consider the alleged errors of the trial court in refusing to give certain proffered instructions on the subject of autopsy, and in excluding evidence which was offered for the purpose of defining an autopsy.

The judgment of the District Court is Affirmed.

App. 47, 50. See, also, Mutual Accident Association of the Northwest v. Tuggle, 39 Ill.App. 509; Pixley v. Illinois Commercial Men's Association, 195 Ill.App. 135; Sturm v. Employers'. Liability Assurance Corporation, Ltd., 212 Ill.App. 354.

11 Mutual Life Insurance Co. of New York v. Schenkat, 7 Cir., 62 F.2d 236;

Metropolitan Life Ins. Co. v. Broyer, 9 Cir., 20 F.2d 818; Standard Accident Ins. Co. v. Van Altena, 7 Cir., 67 F.2d 836; Wells Fargo Bank & Union Trust Co. v. Mutual Life Ins. Co. of New York, D.C., 8 F.Supp. 916; Fidelity Mutual Life Ins. Co. v. Powell, 4 Cir., 74 F.2d 525.