## ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA v. SEVIER.

### No. 11955.

Circuit Court of Appeals, Eighth Circuit.

July 14, 1941.

---

Sam Bushman, of Jefferson City, Mo. (E. W. Dillon, of Columbus, Ohio, and Irwin, Bushman & Buchanan, of Jefferson City, Mo., on the brief), for appellant.

H. P. Lauf, of Jefferson City, Mo. (L. H. Cook and John O. Bond, both of Jefferson City, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This was an action to recover upon a membership certificate issued by appellant, the Order of United Commercial Travelers of America, to Nike G. Sevier, wherein appellee, Margaret Sevier, was named as beneficiary. The parties will be referred to as they were designated in the lower court. The certificate contained provision that the constitution and by-laws of the association should be a part of the contract. It was an accident certificate providing for the payment of benefits in the event of accidental death only. The answer admitted the issuance of the certificate, but denied that the death of the member was by accidental death within the meaning of the constitution of the association. The action was tried to the court without a jury, and the court, among other things, found that:

"9. The Insured's death was from an infection introduced into, by and through the wound in the intestine; that the wound in the intestine, being approximately the size of a large nail, a lead pencil or

small finger of the hand and was visible to the unaided eye only after the opening of the abdomen by surgical operation.

"10. The wound or rupture of the intestine was not visible to the unaided eye, absent the operation and opening of the abdomen.

"11. The accidental injury of the Insured was the proximate, immediate and primary cause of his death."

The court concluded that the death of the insured resulted from an infection introduced into, by or through an open wound in the intestine, within the meaning of the constitutional provision because "the constitutional provision does not require that the open wound be in an external part of the body."

Defendant seeks reversal on the ground that the court has not properly construed the provisions of the insurance contract. It contends that the wound found in the intestine after the abdomen had been opened by surgical operation was not an open wound visible to the unaided eye within the terms of the exception in the constitution made a part of the insurance contract.

The facts are not seriously in dispute. The pertinent part of the constitution of the association contains the following provision: "That the Association should pay the Beneficiary the sum of Five Thousand Dollars should death result from bodily injury effected solely through external, violent and accidental means, and independent of all other causes, but that the society should not be liable for any death by infection, whether caused by accidental means or not, unless the infection be introduced into, by or through an open wound, which open wound must be caused by external, violent and accidental means and be visible to the unaided eye."

The circumstances attending the injury to and death of the insured, Nike G. Sevier, may be stated as follows: On the morning of November 24, 1939, he was driving in his automobile, accompanied by a nephew, from Jefferson City, Missouri, to California, Missouri. At a point about midway between these places, he overtook a colored boy riding a bicycle and going in the same direction that he was traveling. In attempting to avoid striking the boy, insured swerved his car to the left and his automobile struck a concrete drain on the left hand side of the highway and overturned. The boy on the bicycle was not seriously injured. On the same day, insured complained of a pain in his abdomen, which pain apparently continued until the third day, when it became so severe that he consulted a physician at Jefferson City, Missouri. Following examination by Dr. Rambo, he was sent to a hospital. Dr. Rambo, as a witness, testified that he found insured suffering excruciating abdominal pains; that the abdomen was distended and very tender in the lower right quadrant. Later, the insured was operated upon; his abdomen was opened and pus was found in the peritoneal cavity. A mass was found in the lower abdomen, somewhat to the right side, made up of a loop of intestines and some pussy material. The ruptured intestine in that immediate area was easily separated and a hole was found in the colon, through which material had been liberated, causing the formation of of pus and peritonitis. Concerning the condition, Dr. Rambo testified::

"Well, when an injury happens to the intestinal tract, nature attempts to take care of it to protect the rest of the system. For instance, we found in this case a hole in the intestine. This man had been subjected to something that ruptured his intestine and naturally the peristalsis of the intestinal tract released the content of the intestines, and as I said, nature immediately attempts to protect herself and the quickest way is to build loops around that portion of the tract to keep it from spreading, going to other places, and in the process she throws out a binder to seal all the places to keep it from spreading and this had taken place. And since those loops had adhered and sealed about the hole it had formed a new fibrinous material to keep the pus from leaking and going to other places, that formed a mass. The mass was just a protective mechanism. This material was all new material; it was all new, nothing old there. We didn't have to do any dissecting or cutting. Just separate them; take the loops of the intestine and gently pull them apart."

Other medical evidence was to the effect that there was a mass in the abdomen of the insured, which when separated revealed a hole in the colon. The evidence showed that the insured died on December 1, 1939, of a ruptured intestine caused by an automobile accident,

followed by peritonitis and by secondary pneumonia.

It is the contention of defendant that the infection although caused by accidental means was not introduced into, by or through an open wound "visible to the unaided eye," because it was not disclosed until the opening of the abdomen by surgical operation.

◼ The parties agree that the contract, being one by a fraternal benefit society organized under the laws of the State of Ohio, should be construed according to the decisions of that state. It is also conceded, however, that the courts of Ohio have not construed the particular provision in question as applied to such facts as are here presented. Neither have the courts of Missouri construed it, and hence, we must exercise our own judgment in its construction. Mutual Benefit Health & Accident Ass'n v. Bowman, 8 Cir., 99 F.2d 856.

◼ There can be no doubt that policies may properly require that injury may only be established by evidence of a visible contusion or wound on the exterior of the body. Mutual Life Ins. Co. v. Schenkat, 7 Cir., 62 F.2d 236. The manifest purpose of such a provision is to protect against sham claims by barring recovery for alleged injuries of which there is no physical evidence of the means alleged to have effected the bodily injuries and no proof except the insured's own assertion. Peterson v. Locomotive Engineers' Mutual Life & Accident Ins. Ass'n, 123 Minn. 505, 144 N.W. 160, 49 L.R.A.,N.S., 1022, Ann. Cas.1915A, 536; Paul v. Travelers' Ins. Co., 112 N.Y. 472, 20 N.E. 347, 3 L.R.A. 443, 8 Am.St.Rep. 758. Here, we must first observe that the provision of the contract embodied in the association's constitution does not require that the open wound through which infection may be introduced shall be on the exterior of the body. It only requires that such infection shall have been introduced through an open wound caused by external, violent and accidental means, and visible to the unaided eye.

Defendant relies strongly upon the decision of the Tenth Circuit Court of Appeals in Order of United Commercial Travelers v. Edwards, 51 F.2d 187, 189. In that case there was no evidence that the infection was introduced into the system through an open wound. The insured there accidentally fell from his automobile and struck his side or lower abdomen against the running board of the automobile. The skin was not broken but there was an inflamed mark which disappeared by the third day. When the doctor was called the third day, he found a mass in the region of the caecum and the appendix, and an operation was performed. The appendix, the caecum and the bowel were gangrenous and highly infected. Four days later insured died of bloodstream infection and general septicemia. In the course of the opinion the court said:

"There is no contention that the infection was introduced into his system through an open wound visible to the unaided eye."

As applied to the facts in that case, there could not be said to be any ambiguity or uncertainty in the quoted provision of the contract.

In Bahre v. Travelers' Protective Ass'n, 211 Ky. 435, 277 S.W. 467, also relied upon by defendant, it was held that an infection not shown to have been caused by a visible wound was not covered by a policy which exempted such infection unless introduced through an open wound caused by external, violent and accidental means and visible to the naked eye.

In the case of Order of United Commercial Travelers v. Dobbs, Tex.Civ.App., 204 S.W. 468, cited by defendant, the insured was disabled by injury resulting from cerebral hemorrhage. The policy expressly provided that it did not cover cerebral hemorrhages. In Fidelity & Casualty Co. v. Thompson, 8 Cir., 154 F. 484, 11 L.R.A., N.S., 1069, 12 Ann.Cas. 181, this court held that matter coughed into a dentist's eye, disabling him, was not a wound within the provisions of the policy.

In Order of Railway Conductors of America v. Gregory, Tex.Civ.App., 91 S. W.2d 1139, 1140, the insured fell on a railroad tie, causing peritonitis from which he died. The contract of insurance in that case provided that the insurer should not be liable "in case of injury, fatal or otherwise, resulting from any poison or infection unless the infection is introduced into or by and through an open wound, which open wound must be caused by external, violent and accidental means, and be visible to the naked eye." The evidence showed that the fall caused a squeezing and bruising of the intestines and the organs of the abdomen; that this caused

a rupture of the capillaries, or smallest blood vessels, and caused severe hemorrhages, and as a result peritonitis developed. The court concluded that the evidence did not show a wound; hence, this case can not be considered as an authority to the effect that the wound must be externally visible. The case in fact held that recovery was proper because peritonitis, as popularly understood, was not included in the meaning of infection.

A contract may or may not be ambiguous, uncertain or obscure, dependent upon the proven facts. Here, as has already been observed, the contract does not require that the wound through which the infection shall have entered the body shall be on the exterior of the body. There must be physical evidence of its existence. If the wound were on the exterior of the body, that physical evidence would be manifest on an inspection of the exterior of the body. The wound, being on the interior of the body, might still be visible to the unaided eye, as it was here, following a surgical operation or an autopsy. The described hole in the intestine was undoubtedly a "wound," which has been defined as a lesion of the body, and a lesion is a hurt, loss or injury or any morbid change in the structure of organs or parts. Warbende v. Prudential Ins. Co., 7 Cir., 97 F.2d 749, 117 A.L.R. 760. As the contract of insurance does not limit liability to death by infection introduced through an open wound on the exterior of the body, we are called upon to construe it as applied to a wound visible to the unaided eye upon the opening of the abdomen by a surgical operation. The contract could have been made certain had it limited liability to death by infection through an open wound on the exterior of the body. As applied to the facts in this case, this provision is to say the least uncertain, and the intention of the parties is not clearly apparent. The general rule applicable to written contracts is that in case of doubt as to the meaning of the contract, it should be construed against the party who drew it. So, in case of insurance policies, where uncertainties or ambiguities are such as to make it impossible to ascertain, by the application of the ordinary rules of construction, the intention of the parties, they are to be construed strictly against the insurer and liberally in favor of the insured, so as to effect the dominant purpose of the contract of insurance. If conditions, exceptions and exemptions from or limitations of the liability of the insurer are not plainly expressed, they will be construed against the insurer. Stroehmann v. Mutual Life Ins. Co., 300 U.S. 435, 57 S.Ct. 607, 81 L.Ed. 732; Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99; Mathews v. Modern Woodmen of America, 236 Mo. 326, 139 S.W. 151, Ann.Cas.1912D, 483; Dezell v. Fidelity & Casualty Co., 176 Mo. 253, 75 S.W. 1102; State ex rel. Mutual Benefit, Health & Accid. Ass'n v. Trimble, 334 Mo. 920, 68 S.W.2d 685.

It is urged by defendant that the law with reference to the construction of insurance contracts is more liberal toward fraternal benefit societies than to standard insurance contracts. It is to be noted, however, that in Mathews v. Modern Woodmen of America, supra [236 Mo. 326, 139 S.W. 156, Ann.Cas.1912D, 483], the Supreme Court of Missouri held that: "Policies are contracts, elaborately and shrewdly prepared in advance by calculating and astute experts. * * * Insurance policies swarm with intricate technical provisions, stipulations, exceptions, conditions, provisos, limitations, hedging liability about and looking to its avoidance. It is not singular, then, that courts incline to pit judicial astuteness against the astuteness of the policy maker; the latter planting forfeitures in ambush or open, and the former striving to avoid them."

The evidence showed and the court found that the insured suffered a rupture resulting in an internal open wound, through which infection passed. May we say that such a wound was visible to the unaided eye. In Union Casualty & Surety Co. v. Mondy, 18 Colo.App. 395, 71 P. 677, 680, the court reviews many cases dealing with visible marks on the body. The court held that a localized redness on the tissues of the brain of deceased on the right side of the head, revealed only by autopsy was a visible mark upon the body as required by the policy; that the policy did not require that the visible mark should be on the surface of the body. In the course of the opinion the court said:

"Further, there was evidence of a localized redness of the tissues of the brain of deceased on the right side of the head. This was not revealed until the autopsy. This, we think, was a visible mark upon the body as provided in the policy. The terms of the policy did not require that

the visible mark should be upon the surface of the body."

In the instant case, the contract says nothing with reference to what part of the body must bear the open wound, so long as it is visible to the unaided eye. We think a visible mark is not necessarily an external mark. Exposure by the usual methods of surgery of an injury is sufficient to meet the test of visibility. The addition of the words "to the unaided eye," provides an added test as to the kind of visibility required. The sight is to have no artificial aid in performing the function of seeing. It was not necessary here to use a magnifying glass to see the wound, but it was plainly visible to the naked eye. We do not think that the surgical operation was an aiding of the eye within the meaning of this insurance contract.

The judgment appealed from is therefore affirmed.