**PISTOLESI v. MASSACHUSETTS MUT. LIFE INS. CO.**
No. 22451–R.

District Court, N. D. California, S. D.
Dec. 21, 1945.

M. Mitchett Bourquin, S. J. Hugh Allen, and John J. Healy Jr., all of San Francisco, Cal., for plaintiff.

David Livingston and Louis F. DiResta, both of San Francisco, Cal., for defendant.

CLARK, District Judge.

This matter is before the Court on a motion for judgment notwithstanding the verdict or in the alternative, a new trial.

The action was brought to recover under the double indemnity provisions of two life insurance policies. Verdict was rendered for the plaintiff.

The evidence in this case—in the Court's opinion—was clear and convincing that the insured met his death solely through accidental means.

In considering these motions, although there are several questions raised, there is only one main question which is controlling, and that is, whether the death of the insured was within the coverage provided in the policies under the double indemnity provisions, which provide for the payment of double indemnity upon due proof of the death of the insured "as a result directly and independently of all other causes, of bodily injuries effected solely through external violence and accidental means of which, except in the case of drowning, or of internal injuries revealed *by autopsy, there is a visible contusion or wound on the exterior of the body.*"

There was no autopsy. The plaintiff did not know of the existence of the insurance

policies until after the body was cremated in accordance with the request of the insured.

As to the facts it is only necessary to say that the insured, immediately following the accident, was extremely pale, beads of perspiration appeared on his face, he suffered labored breathing, general weakness and debility; drawn countenance; his lips were blue; his feet shuffled when he walked and he complained of pains in his chest. Immediately prior to the accident and at all times prior thereto he was, as far as appearances go, a healthy, agile, robust man and the conditions above set forth appeared immediately after the accident, and if any of these conditions upon the exterior of the body constitute a visible contusion or wound within the meaning of the policy then these motions should be denied; if not, then a new trial should be ordered.

The United States Circuit Court of Appeals, Seventh Circuit in the case of Warbende v. Prudential Insurance Co. of America, 97 F.2d 749, 752, 117 A.L.R. 760, held:

"The evidence discloses that there were scarlet blotches on the skin of the face and on the trunk and extremities of the deceased, and that these scarlet blotches were characteristic of carbon monoxide poisoning. The blotches constituted visible marks on the exterior of the body and were evidence of the bodily injuries, which resulted in death, were effected by carbon monoxide poisoning. But the defendant contends that the scarlet blotches were not contusions or wounds within the meaning of those words as used in the policy. In the case of Mutual Life Insurance Company v. Schenkat [7 Cir., 62 F.2d 236], this Court had occasion to construe the words 'contusion or wound' in an accidental death provision which required that there be 'evidence by a visible contusion or wound on the exterior of the body.' In that case death had been caused by sodium fluoride poison. The stipulation of facts recited: '* * * lips and tongue swollen; became pale; body discolored, * * *.' This court concluded that the foregoing physical marks satisfied the requirement of 'evidence by visible contusion or wound on the exterior of the body.' In reaching such conclusion this court cited and quoted with approval from the case of Thompson v. Loyal Protective Association [167 Mich. 31, 132 N.W. 554, 557]. In the policy which was involved in the Thompson case there was a provision that '* * * the injury includes only the result of external violent and accidental means leaving on the body marks of contusions or wounds visible to the naked eye.' The trial court had instructed the jury that in legal medicine the word 'wounds' meant 'injuries of every description that affect either the hard or soft parts of the body,' and that it comprehended 'bruises, contusions, fractures, luxations etc.,' and that 'in law the word means any lesion of the body.' The Supreme Court of Michigan held that the trial court's instruction correctly stated the meaning of the word 'wounds.' And it appears from the facts of that case that the contusion or wound consisted of a 'discoloration of the skin, swelling and redness over the right kidney and hip;' and there was no contention that the 'contusion or wound' was caused by the impact of any solid body upon the body of the deceased.

"It is true that 'contusion,' etymologically considered, suggests an injury which is the result of the impact of a blow upon the exterior of the body. But for the purpose of our present inquiry the meaning cannot be so restricted. It is obvious that the purpose of requiring that there be a 'visible contusion or wound on the exterior of the body' is to have visible, physical evidence of the operation of the 'external, violent and accidental means,' which are alleged to have effected the bodily injuries. In our opinion 'visible contusion,' as used in the policy, includes any morbid change in, or injury to, either the subcutaneous tissue, or the skin, which produce markings or discolorations that are visible upon the exterior of the body. It is not material whether the 'visible contusion' results directly from the operation of the 'means' upon the exterior of the body, or indirectly from internal injuries which are effected by the action of the 'means.' 'The accidental operation of external means may be wholly internal,' and yet the internal injuries may extend to the subcutaneous tissue or into the layers of the skin. The visibility of the 'contusion' may be due to the discoloration either of the injured tissue under the skin, or of the injured skin itself, or of both."

Circuit Judge Clark, sitting as a district judge, in the District of Connecticut cites the above cases in support of his decision, as follows:

"As to the requirement of 'a visible contusion or wound on the exterior of the body,' the cases hold that its purpose is to provide visible physical evidence of the operation of the 'external, violent and accidental means,' and thus it may include 'any morbid change in, or injury, to, either the subcutaneous tissue, or the skin, which produce markings or discolorations that are visible upon the exterior of the body.' Further, it is not material whether the 'visible contusion' results directly from the accidental means or indirectly from internal injuries, and it need not itself be a 'wound' or the result of a wounding. Warbende v. Prudential Ins. Co. of America, 7 Cir., 97 F.2d 749, 753, 117 A.L.R. 760; Mutual Life Ins. Co. of New York v. Schenkat, 7 Cir., 62 F.2d 236; Wiecking v. Phoenix Mut. Life Ins. Co., supra [7 Cir., 116 F.2d 90]; and cases collected in 39 A.L.R. 1011. Within this definition, therefore, the blotches of the skin and other outward signs of the sunstroke found on the body of the insured satisfied the requirement of a 'visible contusion.' Huss v. Prudential Ins. Co., D.C., 37 F.Supp. 364, 365.

In the case of Mutual Life Insurance Co., of New York, v. Schenkat, appealed to the United States Circuit Court of Appeals, Seventh Circuit, under a like provision in the policy, where the symptoms were that the insured "became violently ill, was nauseated, perspired freely, vomited blood, his lips and tongue were swollen, he became pale and later his body discolored and showed marked paralysis. His abdomen was rigid, he suffered great pain," the Court said in a unanimous opinion:

"The insured died as a 'direct result of bodily injury effected solely through external, violent and accidental means, independently and exclusively of all other causes.' As an evidence of this the policy required, 'and of which * * * there is evidence by a visible contusion or wound on the exterior of the body.' We hold that this evidence was present. * * *

"The word 'contusion' and the word 'wound' have both been given various definitions. Illustrative of this is Thompson v. Loyal Prot. Ass'n, 167 Mich. 31, 132 N.W. 554, 557, where the Court instructed the jury as follows:

" ' "In legal medicine the word 'wounds' means injuries of every description that affect either the hard or soft parts of the body, and it comprehends bruises, contusions, fractures, luxations, etc. In law the word means any lesion of the body."
* * *

" 'The policy distinguishes between contusions and wounds, and includes both. The definition of "wounds" given by the court was a correct one. It is authorized by 4 Cooley's Bfs. on Law of Insurance, p. 3185; Black's Law Dic. p. 1245; Bouvier's Law Dic. (p. 1247), State v. Owen, 5 N.C. 452, 4 Am.Dec. 571. The jury has been charged explicitly, in substance, that it must appear that the death was caused, alone and independent of other causes, by a bodily injury sustained through external violence and accidental means, leaving upon the body marks of contusion, or wounds, visible to the naked eye. The third paragraph excepted to explains and defines to the jury the meaning of the term "visible mark" and the word "wounds" as used in the insurance contract. There was no error committed in such instruction.' " Mutual Life Ins. Co. of New York v. Schenkat, 7 Cir., 62 F.2d 236, 238.

Later, and since the trial of this case (October 30, 1945), the United States Circuit Court of Appeals, Tenth Circuit, in the case of Paul Revere Life Insurance Co., Worcester Mass. v. Stanfield, 151 F.2d 776, has taken a different view, Circuit Judge Murrah dissenting.

I think it can be said without contradiction that one reading these and other decisions on this question finds a sharp division of opinion. From this division of opinion it is apparent that this provision has been liberally construed by some courts and strictly construed by others.

In the absence of a decision of the Ninth Circuit Court of Appeals this court is of the opinion that it should follow what it feels is the majority rule and what it believes to be the liberal rule.

Equity and justice is on the side of the plaintiff and "to tell [her] that the courts, the final arbiters of [her] rights, will not listen to the equity of the case, would be doing violence to the principles of fair dealing, and would be likewise contrary to the best interests of the public at large, which we term 'public policy' " (Idaho) This statement is quoted from an opinion of the United States Circuit Court of Appeals, Ninth Circuit, in the case of Omaha Woodmen Life Ins. Soc. v. Krussman, 131

F.2d 83, at page 84, in which the Court holds that provisions of insurance contracts are not to be strictly applied.

■ Where one is insured against accidental death and the death is the result of an accident, equity and fair dealings should be controlling and any exception or rider which voids the policy should not be controlling, at least they should be strictly construed against the insurer and liberally in favor of the insured, and any uncertainty or reasonable doubt is to be resolved in favor of the insured and against the insurer. It must not be construed on the basis of a strict technical interpretation and allow a provision or rider to defeat the clear intent and purpose of the policy to pay double indemnity in case of accidental death.

■ This risk was fairly within the contemplation of the insurance contract and should not be avoided by any nice distinction in the use of words (quoted in part). Granger v. New Jersey Ins. Co., 108 Cal. App. 290, 291 P. 698.

There is no procedure provided for certifying this question to the United States Circuit Court of Appeals of the Ninth Circuit so that this Court could be advised before ruling on these motions, but I feel the opinions rendered by that Court have construed contracts of this kind strictly against the insurer and liberally in favor of the insured where the equities of the case warrant such a construction. Omaha Woodmen Life Ins. Co. v. Krussman Soc., supra; New York Life Ins. Co. v. Hiatt, 9 Cir., 140 F.2d 752; General American Life Ins. Co. v. Stephens, 9 Cir., 130 F.2d 511. Order of United Commercial Travelers of America v. Groves, 9 Cir., 130 F.2d 863; General Insurance Co. v. Pathfinder Petroleum Co., 9 Cir., 145 F.2d 368.

■ The California law being controlling here, I find the decisions of the Supreme Court of that State, without exception, holding to this liberal rule. In the case of Maryland Casualty Co. v. Industrial Accident Commission, 178 Cal. 491, 173 P. 993, the recovery was limited as strongly as in the case here, but in construing its terms, recovery by the beneficiary was sustained by the California Court. We also find the following where the California Supreme Court has been liberal in construction: Granger v. New Jersey Ins. Co., supra; Clarke v. New Amsterdam Casualty Co.,

180 Cal. 290, 179 P. 195; Wilson v. Travelers Ins. Co., 183 Cal. 65, 190 P. 366; Ogburn v. Travelers Ins. Co., 207 Cal. 50, 276 P. 1004.

"It is a well-recognized rule of law that if any uncertainties or ambiguities appear in an insurance policy which may be solved by either one of two reasonable constructions, the one which is most favorable to the insured and which will give life, force, and effect to the policy should be adopted. The insurance Company, having prepared the policy and all documents used in connection with its issuance, should not be heard to put such a construction upon an ambiguity, caused by it, as will defeat the policy and take from the beneficiary the very purpose and object of the insurance, if a reasonable construction upholding the insurance can be had that does no violence to the language used and the clear intention of the parties. Pacific Heating & Ventilating Co. v. Williamsburg, etc., Co. [of Brooklyn], 158 Cal. 367, 111 P. 4; Welch v. British American Assurance Co., 148 Cal. 223, 82 P. 964, 113 Am.St.Rep. 223, 7 Ann.Cas. 396; Witherow v. United American Insurance Co. of Pennsylvania, 101 Cal.App. 334, 281 P. 668, [669]. With this rule in mind, we will proceed to a consideration of the contract of insurance involved in this appeal." Narver v. California State Life Ins. Co., 211 Cal. 176, 294 P. 393, 395, 71 A.L.R. 1374.

"Generally, object and purpose of 'insurance' is to indemnify the insured in case of loss, and ordinarily such indemnity should be effectuated rather than defeated and to that end the law makes every rational intendment in order to give full protection to the interests of the insured." Glickman v. New York Life Ins. Co., 16 Cal.2d 626, 107 P.2d 252, 131 A.L.R. 1292.

There are a great many California cases holding to the same rule and I have been unable to find any from the Court of that State holding to the contrary.

■ The Court assumes that this policy should be construed to give to the insured the protection which under reasonable construction should be given, "and to ascertain from an examination of the entire instrument read in the light of the circumstances surrounding its execution the sense which the parties employed the particular phrase in question." Anderson v. Mutual Life Ins. Co. of New York, 164 Cal. 712, 130 P. 726, 727, Ann.Cas.1914B, 903.

And it is not unreasonable to give the proviso in the policy the construction contended for by the plaintiff.

█ If two inferences can be drawn from the evidence, the finding of the jury should not be set aside. The evidence in this case was, in my opinion, sufficient to submit the case to the jury, and to justify the verdict.

I have not discussed any of the other points raised by the defendant as I feel they are not well taken.

It is my opinion that the Motion for judgment notwithstanding the verdict, and the Motion for new trial should be overruled and an Order will be ordered accordingly.